# HILL VS. BUSH.

Where a general replication is put in to an answer in chancery, all the allegations in the answer that are responsive to the bill, are taken as true, unless disproved or overturned by two witnesses, or by one with pregnant circumstances. (19 *Ark* 62, 166.)

A misrepresentation in order to affect the validity of a contract, must relate to some matter of inducement to the making of the contract, where the purchaser relies on the superior knowledge and information of the seller—not where the purchaser has equal means of information, and may rely upon his own judgment, founded upon actual examination.

Where the seller and purchaser, together, examine the corners and open lines of a tract of land—with equal facilities of observation—and make a mutual mistake as to the exact lines—both being of opinion that the lines include a particular location, whilst they actually include only a part of it—the contract cannot be avoided for such mistake.

*Appeal from the Circuit Court of Sevier county, in Chancery.*

The Hon. A. A. STITH, Circuit Judge.

WATKINS & GALLAGHER, for the appellant.

This is a case of misrepresentation, deceit and concealment upon a sale of certain land, whereby there was a failure of title and consideration. Complainant, Hill, therefore claims a rescission of the contract. It will be sufficient to cite the cases of *Yeates vs. Pryor*, 6 *Eng*. 67; 1 *S. & M.* 443; 3 *Ib.* 73, 683.

S. H. HEMPSTEAD, for the appellee.

There are several rules with regard to rescissions of contracts on the ground of misrepresentation:

1. The representation must be of something material, con-

stituting an inducement or motive to make a purchase, and by which a party is actually misled to his injury.

2. The representation must be something as to which one party places a known trust and confidence in the other; and he must have relied on it.

3. The representation must be clearly proved to be false.

If the means of information are alike accessible to both parties, so that with ordinary prudence or vigilance, the parties might, respectively, rely upon their own judgment, they must be presumed to have done so; or if they have not so informed themselves, must abide the consequences of their own inattention and carelessness. *Yeates vs. Pryor*, 6 *Eng.* 66; 2 *Kent* 484, 485; *Hall vs. Thompson*, 1 *Smedes & Marshall* 443; *Mississippi Union Bank vs. Wilkinson*, 3 *Ib.* 75; *Ayers vs. Mitchell, Ib.* 683; *Davis vs. Walker*, 6 *Johns.* 354.

Mr. JUSTICE HANLY delivered the opinion of the Court.

Moses Hill, the appellant, filed his bill in the Sevier Circuit Court, against James R. Bush, the appellee, for the purpose of rescinding a contract for the purchase of a forty acre tract of land, lying in Pike county, and to perpetually enjoin the collection of the purchase money, which had not been paid.

The bill charges, in substance, that appellee represented himself as being the owner of the NE¼ of the SW¼ of Section 12, Township 6 South, Range 27 West, situate in Pike county, on the waters of the Clear Fork of Little Missouri river—that there was a fine mill seat on the tract, at a place known as the " Upper Shoals," and that about 12 acres were cleared and ready for immediate cultivation.

The bill further charges, that the appellee, understanding that appellant was desirous of purchasing a mill-seat on the waters of the Clear Fork of Little Missouri river, in Pike county, proposed to sell him the one he represented himself as owning, as above, and offered to take for it, the sum of five hundred dollars, payable as hereinafter stated; and as an inducement to the appellant to purchase his tract and mill-seat

with the cleared land thereon, the appellee farther represented to, and assured the appellant that there were two other mill-seats on the same stream, situate about equi-distant below—say one mile apart—the first known as the "Middle Shoal," and the other as the "Lower or Stone's Shoal," and that both of these mill-seats were on lands that were vacant, and subject to private entry at government price, $1 25 per acre; that he, appellee, had a recognized claim on these mill-seats, which he would relinquish to appellant, if he would purchase his tract and mill-seat at the price of $500, so that by the purchase of his at that price, and the entry of two other forty acre tracts at government price, he would have three first rate mill-seats with water power sufficient to propel the machinery for a grist and saw-mill, which appellant represented he wanted to combine, in case he purchased, and concluded to erect a mill at either point.

The bill, moreover, charges that appellant being at the house of appellee at the time these several representations were made, and the several mill-seats mentioned being situated near the residence of appellee, he, at the instance of appellee, and in his company, went to look at the several mill-seats so represented; and being an utter stranger in that part of the country, the appellee proposed to show him the situation of the lines of the public surveys embracing the several tracts within which those mill-seats were said to be located, and from the lines, as shown him by appellee, the land he represented himself as being the owner of, would, and did, include the "Upper Shoal," constituting his mill-seat, and so in respect to the lines around the two other 40 acre tracts, said to include the other two mill-seats, denominated the "Middle Shoal" and the "Lower or Stone's Shoal," respectively.

The bill further charges, that from these representations, and his confidence in the good faith of the appellee in respect to them, and his reliance upon them alone, he was induced to purchase the tract represented as including the "Upper Shoal," with the quantity of cleared land, also represented to be on it, for the price and consideration of $500, to be paid as follows,

that is to say: five dollars paid, or given as earnest money, at the time, and the residue to be paid on or before the 1st February, 1855, for which, appellant avers he subsequently gave his note, and at the same time took from him a title bond, conditioned that he would convey the tract, designated by numbers, when the full consideration therefor should be paid him, according to the tenor of appellant's note. The bill, in addition, charges that the several and various representations made by appellee to appellant, as before stated, were, and are, utterly false and untrue; that the tract of land sold to him did not include the mill-seat, known as the " Upper Shoal," and did not have upon it more than 2½ acres of cleared land; and that the other two mill-seats, known as the " Middle Shoal" and the " Lower or Stone's Shoal" were not on public land, subject to private entry at $1 25 per acre, but on the contrary thereof, the latter was, and had been the private property of one William Stone, who had long before the sale to appellant, entered it from the government, etc.

The appellee answered the bill—denied that he represented that the tract of land, he proposed to sell to appellant, had on it a valuable mill-seat—avers that all he represented in regard to the same, was, that so far as he could judge, (professing to know nothing about mill-seats,) from his own observation, and the advice and opinions of others expressed to him, the mill-seat was a good one: that appellant affirmed he knew all about such things, and should look for himself, which he did do, and declared that the " Upper Shoal" would not answer the purpose; that appellant pronounced the " Middle Shoal" a good mill-seat; that that " Shoal" was on public land, and was at that time subject to private entry—denies that appellant, in making the examination of the land and shoals, in any way, relied on appellee's judgment; that appellee merely stated, as his opinion or belief, that entering one 40 acre tract would cover the mill-seat at the " Middle Shoal"—denies that he informed appellant that the " Lower or Stone's Shoal" was on land claimed by him, appellee; but admits that he did give it

as his opinion, that by entering a 40 acre tract of land, the privilege of the water power afforded by such shoal, would be so interfered with that it would be valueless to any one else—avers that the tract of land alluded to in that connection, was then vacant—denies that he induced appellant to believe, that he, appellee, had offered to sell any claim upon the public land—avers, that, after appellant had informed him that the "Upper Shoal" would not do, he supposed appellant did not want the land he had proposed to sell him, and under this impression, declined giving him any further information, which he might be able to do, in regard to the supposed lines and corners, as he intended to enter a part of the vacant lands for his own use and benefit, and to enhance the value of the land he had proposed to sell to appellant, and which he supposed appellant had declined to purchase—avers that the 40 acre tract which he sold to appellant, cost him $350, when land was comparatively cheap, and that it was well worth $500, when appellant bought it—denies very fully all fraud imputed to his charge in the bill, etc.

The appellant interposed a general replication to the answer, and the cause was heard upon the bill, answer, replication and proof.

At the hearing the Court decreed that the injunction be dissolved and the bill dismissed. From this decree Hill appealed to this Court. It is insisted for the appellant, here, that the decree is erroneous and must be reversed; whilst, with equal apparent sincerity, the appellee maintains that the decree is warranted by the proof and the law.

Before proceeding to notice the testimony in connection with the pleadings, we will take occasion to state the rule, which obtains in chancery, in relation to the effect of an answer, as affording evidence for the party who makes it, and the proof that is requisite to overturn, or set it aside. The rule on the subject, is this: that where a general replication is put in to an answer in chancery, all the allegations that are responsive to the bill are taken as true, unless disproved or overturned by

two witnesses, or by one with pregnant circumstances. See *Wheat et al. vs. Moss et al.*, 16 *Ark. R.* 243; *Shields vs. Trammell et al.*, 19 *Ib.* 62; *Spence vs. Dodd*, *Ib.* 166.

1. The bill charges that appellee made the following false representations in relation to the land sold to, and bought by the appellant: That he was owner of the "Upper Shoal;" that the tract embracing it had about 12 acres of cleared land on it; and that the "shoal" was a first rate mill-seat. The answer admits that appellee represented he was owner of the "Upper Shoal," and that the tract including it, had about 12 acres of cleared land on it, and asserts that both these representations are true in point of fact, but positively denies that appellee represented that the "Upper Shoal" afforded a first rate mill-seat.

There seems to be no controversy as to the title of the appellee to the 40 acre tract sold by him to the appellant. It may be conceded therefore, that this is out of the question. Let us see whether the answer, which asserts the truth of the representation in relation to the quantity of cleared land, that is on the tract sold, has been overturned by two witnesses, or one with pregnant circumstances. The only witness, who testified as to this fact, was J. J. Hays, and he only stated it as his opinion that the tract did not contain more than four or five acres of cleared land. This then would not be sufficient to overturn the answer on this point. But the matter is put fully at rest by reference to the plat of survey accompanying the transcript in this case, which was made under an order of the Court below, and by the agreement of counsel must be treated as evidence in the cause. It appears from that, that the quantity of cleared land exceeds 12 acres by a small fraction of an acre. So that the answer is absolutely supported by affirmative proof in this particular.

The answer denies that appellee represented the "Upper Shoal" to be a first rate mill-seat. What is the proof as to this?

J. J. Hays, the only witness who was present when the pur-

chase was made, does not absolutely falsify the answer on this point, though his testimony has that tendency, as far as positive assertions can do so: but when the entire body of his testimony is considered, we are rather inclined to believe that the assertions are so qualified by the context, that it may be esteemed as affording very little evidence to repel the answer on this point. Hays says that appellant did not rely on the representations made by appellee in relation to the mill-seat, but absolutely went out with appellee and himself to the "Upper Shoal," to determine its fitness for a mill-seat, and, on examination and comparison, concluded the "Middle Shoal" was much better; and whilst the examination was being made, and before the purchase was concluded, determined to erect a mill at the "Middle Shoal," but persisted in his purpose to buy the "Upper Shoal." There is not the slightest evidence afforded by the transcript, that appellee professed any superior knowledge touching the subject about which the representation in this respect is charged to have been made by him. But on the contrary, it is manifest, we think, from the tenor of Hays' evidence, that if any such representations were really made by appellee to appellant, that it only amounted to an expression of an individual opinion on his part, which the appellant should not, as, in point of fact, it seems, he did not rely on. The rule being in such case that, a misrepresentation, in order to affect the validity of a contract, must relate to some matter of inducement to the making of the contract, in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other, on the subject of the contract: for if the means of information are alike accessible to both, so that, with ordinary prudence or diligence, the parties might, respectively, rely upon their own judgment, they must be presumed to have done so: or if they have not so informed themselves, must abide the consequences of their own inattention and carelessness. Such representations, therefore, to amount to fraud, must be of a decided and reliable character,

holding out inducements to make the contract, calculated to mislead the purchaser and induce him to buy on the faith and confidence of such representations, and in the absence of the means of information to be derived from his own observation, and inspection, and from which he could draw conclusions to guide him in making the contract, independent of the representations of the vendor." See *Yates et al. vs. Pryor,* 6 *Eng. R.* 66, 67 *and cases cited;* see also *Williams' Eq.* 148–9; *Adams Eq.* 177, 351; *Ball vs. Lively,* 4 *Dana R.* 370;. *Clarke vs. White,* 12 *Pet. R.* 178; *Evans vs. Bickenell,* 6 *Ves. R.* 173, 183; *Attwood vs. Small,* 6 *Cl. & Fin.* 444, 445 *per* LORD BROUGHAM.

The answer not being overturned by evidence on this point, and it clearly appearing from the proof, that if such representation had, in truth, been made, as charged in the bill, the appellant did not rely on it, but chose to avail himself of the opportunity afforded him by his position in reference to the subject matter of the contract, elected to act on his own judgment founded on actual examination of the subject, after an enquiry into the truth of the representations.

2. It is charged in the bill, also, that appellee represented the " Middle. Shoal" to be a first rate mill-seat, and on vacant land, which he asserts to be true.

J. J. Hays testified, as to this point, about as he did in reference to the same point in regard to the " Upper Shoal." He also testified that appellant made a careful examination of the " Middle Shoal" before the purchase was concluded, and was of the opinion that it afforded excellent water power. He expressed himself so much pleased with it, that he determined to erect a mill there in preference to either of the other two locations. The answer is somewhat contradicted by the testimony of this witness on this point, or in reference to the representation as to the quality of the mill-seat, but it is not overturned: and if overturned, the representation is rendered wholly immaterial, as far as it could affect the appellant, on account of its truth, which is established by the appellants' admission as proved by Hays.

34

As to the fact, whether the "Middle Shoal" was on vacant land, as averred to be true by the answer, we think there can be no doubt of the fact, taking the testimony of Hays, and the Register of the Land Office at Washington, in Hempstead county, together.

The Register testified that the 40 acre tract including the "Middle Shoal," was not entered until the 7th January, 1854— the next day after the 40 acre tract supposed to include the "Lower or Stone's Shoal," was entered by the witness, Hays. Hays testified that he entered the last named tract for the appellant, after the contract was made between the appellant and appellee for the 40 acre tract, on which the "Upper Shoal" is situated. So that there can be no doubt but that the tract including the "Middle Shoal" was vacant at the time of the trade between the parties. The answer is therefore not only not contradicted on this point, but is absolutely corroborated by this testimony.

3. It is also charged in the bill, that appellee represented the "Lower or Stone's Shoal" to be a first rate mill-seat, and on vacant land; which is, likewise, asserted to be false.

The answer denies that appellee represented that shoal to be a first rate mill-seat; but admits he represented it was on vacant land; which he asserts to be true.

Whether the assertions or representations were or mere not made, is a matter of no moment; for it is manifest from the proof in the cause, that they are or were substantially true when made, if made at all. The appellant was not, and could not have been injured by them.

4. The bill, moreover, charges that appellee represented he had a recognized claim to the 40 acre tracts including the "Middle" and "Lower or Stone's Shoals;" which it asserts to be false.

The answer denies that such representation was made by the appellee.

The truth of this charge in the bill was attempted to be sustained by the testimony of the witness J. J. Hays, but we think

without success. Hays states that some such representation was made; but in the same connection he also states that appellee told appellant that the tracts were subject to private entry. The statement of this fact alone was equivalent to the appellee saying that he had no legal or valid claim to the land, for the appellant was bound to know, that if the land was subject to private entry, appellee could have no claim which the law recognized as valid. The appellant must have understood the appellee as intending to mean that his claim was simply recognized by the public,—his neighbors—and not such an one as gave him any preference over any one else to enter the land in question. That such was appellant's understanding is apparent from the fact of his sending his agent, Hays, to Washington, Hempstead county, to enter a part of the land, without taking from appellee any relinquishment or other written evidence of his release of his asserted *recognized claim* to those lands. But if Hays had sworn unqualifiedly to the fact, his evidence would not have counteracted appellee's answer denying the fact of the representation in this respect.

5. It is charged in the bill, that the "Upper Shoal" is not included within the limits of the 40 acre tract bought by appellant from appellee, which was the main consideration inducing the purchase of the tract: whilst it is asserted by the answer, that the shoal in question is situated on the 40 acre tract so sold and purchased. The only satisfactory evidence we have on this subject, is that furnished by the plat or map made from actual survey under the order and direction of the Court below. It appears from this plat, almost the entire "Upper Shoal" is situate on the 40 acre tract sold by appellee to appellant. But appellant could not have been misled by the representation, if really made by the appellee; for it is not pretended that he was not shown the correct corners of the tract before the purchase was made. He had the same means of information afforded him, which the appellee possessed on the subject. The entire lines embracing the 40 acres sold were open or unsurveyed lines. The appellee had no other means of ascertaining the relation

of those lines to the shoal than appellant had. They had to rely, for ascertainment of distance between corner and corner, and intermediate objects, upon their steps or paces, and for the course of the open lines upon their visions. After a full and careful examination of the corners and lines, ascertained in the mode stated, we find the appellant satisfied that the shoal in question was embraced by the 40 acres purchased. If upon survey, it was found not to be entirely so, the consequences of the mistake as to the fact, should not, under the circumstances, be visited upon the appellee. We are only surprised that the parties were so nearly accurate as to the lines in reference to the shoal, under the attendant facts. We are forced to attribute the inaccuracy to a mutual mistake of the parties, without intention of fraud on the part of the appellee. The consequences of the mistake are not of such a character as to entitle the appellant to any relief on that account.

6. We are, moreover, of opinion, that the charge of fraud in the bill is not sustained by the proof; but that the answer in this respect is substantially corroborated.

The decree of the Circuit Court of Sevier county in chancery is therefore affirmed with costs.