DARNELL *v.* BIBB.

Opinion delivered May 3, 1920.

1. EVIDENCE—AMBIGUITY IN WRITTEN CONTRACT—PAROL EVIDENCE OF INTENTION.—Where a written contract for the conveyance of 320 acres of land reserved to the grantor sixty acres described according to government survey, and further stipulated "that this sixty acres is located where the residence, gin, storebuilding, barns and tenant houses are located," and the buildings mentioned were not situated on the sixty acres described, but upon twenty acres adjoining, the contract was ambiguous, and it was competent to introduce parol testimony to show the intention of the parties.

2. REFORMATION OF INSTRUMENTS—MISTAKE OF DRAFTSMAN.—Where there was no mistake as to the subject-matter of a contract of sale of land and for reconveyance of a portion thereof, nor as to the boundaries, and the only mistake was that of the draftsman in failing to give a correct description of the lands to be reconveyed, the seller is entitled to have reformation of the contract and reconveyance.

3. CANCELLATION OF INSTRUMENTS—BURDEN OF PROOF.—In an action to reform a contract of sale of land, where defendants by way of cross-action asked for a rescission upon the ground that the minds of the parties never met, the burden of proof was on the defendants to show that they were entitled to a cancellation.

4. VENDOR AND PURCHASER — MISREPRESENTATION.—To constitute ground for rescinding a contract of sale of land, a misrepresentation must relate to some matter in which, from the relative positions of the parties and their means of information, the one must necessarily be presumed to contract upon the faith of the other's statement.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*Buzbee, Pugh & Harrison* and *Fink & Dinning,* for appellants.

1. The burden of proof was on appellee and no fraud is proved. If appellee is entitled to any relief at all, it is not reformation but a rescission of the contract for a mutual mistake as to the location of the improvements and the boundaries of the tract of land. There was a clerical error in describing the lands to be reserved by appellee. Appellants had no knowledge or information as to the boundaries or corners of the tract claimed by appellee. The only source of information was the representations of appellee and a copy of his contract with Caraway. There is no testimony that appellants made any false or fraudulent representations to appellee to induce him to enter into the contract or for any other purpose. Appellee had actually occupied the lands for ten months when the contract was executed and had ample opportunity to ascertain where his lands were situated and the boundaries. He had ample opportunity to ascertain all the facts, and with that opportunity he agreed to sell, and did sell, to appellants the lands upon

which the improvements were situated. His mistake was due solely to his own negligence and inattention. 95 Ark. 527; 89 *Id.* 315. See, also, 11 Ark. 66; 27 *Id.* 244; 74 *Id.* 68; 19 *Id.* 522; 93 U. S. 55; 155 C. C. A. 14; 89 Ark. 313; 120 *Id.* 113; 104 *Id.* 488. Appellee has not shown that appellants have been guilty of even a semblance of fraud or deceit or overreaching, and the evidence is not clear, unequivocal and convincing, as required in a court of equity.

2. Even if there were fraud on the part of appellants, appellee did not rely upon any such fraudulent representations. 101 Ark. 603. Appellee should not be permitted to prevail either upon his own version of the facts or that of his adversary.

3. If plaintiff has made any case at all, it is one arising only from mutual mistake as to the location of improvements and boundaries, and a reformation of the contract should not be granted. 101 Ark. 140; 23 R. C. L. 328, 335; *Beardsley* v. *Duntley,* 69 N. Y.; 217 S. W. 369. If entitled to any relief, it would only be rescission of the contract. Here the contract has been executed. 104 Ark. 488.

*Moore & Vineyard* and *J. Y. Burke,* for appellees.

1. The representations made by appellants that appellee would receive a deed for the sixty acres of land with the improvements thereon was the sole inducement for the contract and deed, and it would be a fraud and wilful misrepresentation on their part. The representations were material and were relied on by appellee. 47 Ark. 148; 110 *Id.* 306; 71 *Id.* 98. There was no mutual mistake, but if so it was unilateral mistake, and not sufficient to have the contract rescinded. 99 Ark. 486. A mutual mistake will not be corrected except upon the clearest and most satisfactory evidence. 75 Ark. 266-72; 75 *Id.* 72; 46 *Id.* 167. See, also, 19 Ark. 522; 47 *Id.* 148; 101 *Id.* 608.

2. Appellants are not in position to ask that the contract be rescinded or avoided for fraud or misrepresentations or mistake. They should have taken advan-

tage of the opportunity within a reasonable time after the discovery of the alleged fraudulent misrepresentation or mistake. The delay is unreasonable. It is too late to seek reformation, as the contract has been executed. This case is only one of fact, and the findings of the chancellor are sustained by the evidence and at least persuasive if not conclusive.

WOOD, J. On the 5th day of February, 1917, the appellee Bibb entered into a written contract with T. H. Caraway, whereby the latter agreed to sell Bibb 320 acres of land in Phillips County, Arkansas, for the sum of $16,-000 of which amount the sum of $2,000 was paid in cash and the balance of the purchase money was to be paid in annual payments of $1,400 for a period of ten years with interest from date at ten per cent per annum. After the execution of the contract Caraway executed a warranty deed conveying the lands to appellee Bibb. Caraway deposited this deed with the Security Bank & Trust Company of Helena, Ark., to be held until the balance of the purchase money was paid by Bibb. Upon the execution of the contract between Caraway and Bibb the latter went into possession of the lands and thereafter he entered into a written contract with Luther Darnell and W. O. Glines, who were partners in the real estate business under the firm name of West Helena Realty Company, hereafter called appellants. That contract is as follows:

"West Helena, Ark., November 19, 1917.

"This contract and agreement made and entered into this the 19th day of November, 1917, by and between W. Y. Bibb of Phillips County, Arkansas, party of the first part, and West Helena Realty Company of West Helena, Arkansas, party of the second part, witnesseth:

"That, for and in consideration of the sum of $15,540, the same to be assumed and paid to T. H. Caraway by December 1, 1917, by the party of the second part, as the amount above set forth is now standing against said land hereinafter described, in consideration of said second party agreeing to do as above set forth, the said first

party agrees to deed to said second party the following described lands, towit: The east half of the northeast quarter of section 22, and the west half of the northwest quarter and the northeast quarter of the northwest quarter, and the west half of the southeast quarter of the northwest quarter, and the northwest quarter of the northeast quarter, all in section 23, township 1 south of range 4 east, Phillips County, Arkansas. The said first party retaining unto himself the southwest of the northwest quarter and the east half of the southeast quarter of the northwest quarter of section 23, township 1 south, range 4 east, containing sixty acres. It is understood and agreed that this sixty acres shall be deeded to said first party free and clear of encumbrances, and it is further understood and agreed that the above sixty acres is located where the residence, gin, store building, barns and tenant houses are located, and they are to remain the property of the said first party.

"Deed to all of the above property is to be made at once and placed in the Security Bank & Trust Company, and held until payment is made, and possession to be given as soon as deed is signed and property removed.

"It is further agreed that said second party may go upon any of said land to survey or sell any part of it as soon as the deed is delivered, so long as they do not interfere or destroy any crops.

"In witness whereof, the parties to this contract have set their hands and affixed their seals the day and year first above written."

(Signed) . W. Y. Bibb, First Party.

West Helena Realty Company,

By W. O. Glines, Manager.

On November 20, 1917, Bibb executed to Everett Darnell, trustee for the appellants, a warranty deed to the lands as described in the above contract.

This action was brought by the appellee against the appellants for the purpose of reforming the above contract and deed.

The appellees' complaint set out the description of the lands as contained in the contract and deed and alleged in substance that it was the intention of the parties to the contract that appellee should convey to the appellants, in consideration of the assumption by them of the balance of the purchase money which the appellee owed Caraway, the same lands which he had purchased from Caraway except sixty acres on which the residence, gin, store, buildings, barns and tenant houses were located; that to effectuate the contract between the parties it was understood that he should convey to appellants all the lands purchased by him from Caraway and that appellants in turn should convey to the appellee the sixty acres on which the improvements mentioned were located; that appellee was an ignorant negro farmer and was not familiar with the description of lands according to the government survey; that appellants were real estate agents and engaged in the business of buying and selling lands; that they prepared the contract and deed above set forth; that he relied upon their integrity to so frame the instruments as to properly describe the land which he had reserved under the contract; that a proper description of these lands would have been as follows: The southwest quarter of the northwest quarter and west half of the southeast quarter of the northwest quarter of section 23, township 1 south, range 4 east; that instead of so describing the lands the appellants fraudulently described them as the southwest quarter of the northwest quarter and the east half of the southeast quarter of the northwest quarter, section 23, township 1 south, range 4 east; that appellants so described the lands with the intention of depriving the appellee of the sixty acres of land upon which the improvements above mentioned are situated; that the appellee had frequently demanded of appellants to deliver him a deed in accordance with the contract, which they had refused to do.

Appellee prayed that the instruments be reformed so as to express the real contract between the parties and that the appellants be required to execute and deliver to

him a warranty deed containing the correct description of the sixty acres on which the improvements above mentioned are located.

Appellants in their answer alleged, among other things, in substance, that according to the terms of the contract between them and the appellee they were to pay Caraway the unpaid portion of the purchase price which the appellee had agreed to pay him; that appellee agreed to convey all the lands purchased by him from Caraway except the southwest quarter of the northeast quarter and east half of the southeast quarter of the northwest quarter of section 23; that appellee represented to appellants that the southeast corner of the tract of land occupied by him was at a point which was afterward found to be the southwest corner of the northeast quarter of section 23, when in truth and in fact the southeast corner of the said tract of land was and is the southeast corner of the southwest quarter of said northeast quarter in section 23, the said last named point being a quarter of a mile east of the point designated and shown by the appellee to appellants as being the southeast corner of said tract of land; that appellee further represented that the improvements mentioned in the contract were situated upon the southwest quarter of the northeast quarter and the east half of the southeast quarter of the northwest quarter of section 23, when in truth and in fact said improvements were situated upon the southwest quarter of the northwest quarter and the west half of the southeast quarter of the northwest quarter of section 23; that appellants had no knowledge of the true situation of these lands and relied upon the representations of the appellee as to the location of the southeast corner of his tract.

Appellants further alleged that appellees represented that there were 220 acres of good, tillable land in that portion of the tract which he agreed to convey to them when in truth, if he is permitted to reform the contract as prayed by him, appellants would receive under their deed only 100 acres of land in cultivation, the balance being rough, hilly, untillable and almost worthless

land which the appellants would not have purchased under any conditions had not the appellee made the false and wrongful representations alleged.

Appellants denied any fraud on their part and alleged that the contract of November 19, 1917, and the deed of November 20, 1917, executed by the appellee reflected accurately and honestly the intention of the parties as to the description of the lands to be retained by the appellee; that if in truth and in fact the improvements claimed by the appellee were not situated upon the lands reserved by him it was due to the fact of a mutual mistake between the appellants and the appellee or else due to the wilful and fraudulent misrepresentations of the appellee at the time of the execution of the contract.

There were other pleadings raising issues concerning other parties to the cause, but we do not set these forth for the reason that the appellants in their brief concede that the issues here may be "narrowed to the question as to the right of plaintiff (appellee) to prevail upon the cause of action stated in the complaint."

The court found, among other things, the facts to be that appellants were to deed to the appellee the 60 acres of land upon which were located the residence, gin, tenant houses, barn and store buildings; that these improvements were situated upon the southwest quarter of the northwest quarter and the west half of the southeast quarter of the northwest quarter of section 23, township 1 south, range 4 east.

The court entered a decree reforming the contract of November 19, 1917, according to this finding and requiring the appellants to execute to the appellee a warranty deed to the lands claimed by the appellee described in the contract as reformed. From that decree is this appeal.

The testimony of the appellee was to the effect that appellants came to his home and desired to acquire the land purchased by him from Caraway and sell it in tracts. He did not wish to sell it in tracts but wanted to dispose of all of it. They walked over the land and

inspected it and requested the appellee to come to their office the next day, which the appellee did. There Darnell told appellee that whatever arrangements he made with Glines would be all right. Glines said to appellee, "After we left your place yesterday we have decided to offer you another proposition. We will agree to take all this land off your hands and give you 60 acres of the land retaining the premises for yourself. We will give you that in the clear." The 60 acres were the lands upon which the improvements above mentioned were located.

Glines prepared the instrument on November 19, 1917, evidencing the contract between the appellee and appellants for the sale and purchase of the lands. In that contract the land which appellee was to retain is described as the southwest quarter of the northwest quarter and east half of the southeast quarter of the northwest quarter of section 23, township 1 south, of range 4 east, containing 60 acres. Following this description is the provision, "It is understood and agreed that this 60 acres shall be deeded to said first party free and clear of encumbrance and it is further understood and agreed that the above described 60 acres is located where the residence, gin, store buildings, barns, and tenant houses are located and they are to remain the property of the first party."

Glines was asked in regard to this provision, "Why did you put that in your contract?" and answered, "Because I was anxious and so was he that he keep his buildings, and we wanted to be sure to get it in there."

Appellee testified that he would not have signed the contract and deed if he could not have retained the 60 acres upon which the improvements were located, and the above testimony of Glines also shows that it was his understanding that the appellee, as a part of the consideration for the contract, was to reserve the lands upon which the buildings were located.

The undisputed facts of this record show that the improvements above described are situated upon the

southwest quarter of the northwest quarter and west half of the southeast quarter of the northwest quarter of section 23, whereas the lands upon which the improvements are located are described in the contract as the southwest quarter of the northwest quarter and the east half of the southeast quarter of the northwest quarter of section 23, township 1 south, range 4 east. Under the undisputed facts, therefore, it appears that Glines, who was the draftsman of the contract, instead of carrying out the intention of the parties to the contract, described the 60 acres which the appellee was to reserve and which were to be deeded to him by the appellants in such manner as to deprive the appellee of all the improvements. In other words, the improvements were not located on the 60 acres as described in the contract.

The contract, therefore, in connection with the undisputed testimony, shows an obvious ambiguity and conflict in its provisions. This ambiguity and apparent conflict rendered competent the parol testimony showing the intention of the parties.

In *Wood* v. *Kelsey,* 90 Ark. 272, we said: "Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and the correct application of the language to the things described." See also *New York Life Ins. Co.* v. *Allen, ante,* p. 143; *Keopple* v. *National Wagon Stock Co.,* 104 Ark. 473. The undisputed testimony shows that the land which was to be retained by the appellee under the contract was erroneously described by the draftsman through pure mistake. The appellee alleges that it was done through fraud. We are convinced that he is mistaken in this. But whether through mistake or fraud is wholly immaterial, for, in either case, as we view the facts, the appellee has shown by testimony which is clear, satisfactory, and convincing (indeed by testimony which we regard as undis-

puted), that he is entitled to have the contract reformed as prayed in his complaint. In making this proof, appellee has met every requirement of the law. The law applicable to such cases was recently announced by this court in *Welch* v. *Welch,* 132 Ark. 227, where our own cases and other authorities upon the subject are cited and reviewed. See also *Cain* v. *Collier,* 135 Ark. 291.

Counsel for appellants contend in their brief that if the appellee is entitled to any relief at all it is not reformation but a rescission of the contract growing out of the mutual mistake of the parties as to the location of the improvements and the boundaries of the tract of land.

Appellee is not asking for rescission and cancellation of the contract. On the contrary, he asks that the contract be reformed to reflect the intention of the parties, and that as thus reformed it be specifically enforced. Nor do we understand that appellants are insisting here that the contract should be rescinded. They urge that the proof shows that there was a mutual mistake as to the boundaries, and therefore that the minds of the parties did not meet on the subject-matter of the agreement. This fact, they contend, would entitle the appellee to a rescission, if he so wishes, of the contract but not to a reformation and enforcement thereof. The appellee is entitled to have the case tried out on his own theory as set up in his pleadings. His theory, is, that there was no mistake as to the subject-matter of the contract, nor as to the boundaries; that the only mistake was that of the draftsman in failing to correctly describe the lands which the parties to the contract had agreed that appellee should have. The appellee, as we have shown, has fully sustained the cause of action set forth in his complaint.

But, if we are mistaken in this, and if we treat the case as one for rescission by way of cross action on the part of the appellants, nevertheless, appellants have not shown that they would be entitled to such relief. The burden of proof on that issue would be upon them.

In *Hill* v. *Bush,* 19 Ark. 522, we held: "Where the seller and purchaser, together, examine the corners and open lines of a tract of land—with equal facilities of observation—and make a mutual mistake as to the exact lines, both being of the opinion that the lines include a particular location, whilst they actually include only a part of it, the contract cannot be avoided for such mistake."

Now the testimony of appellants tended to prove that appellee told them he had 320 acres of land and that there were 80 acres east of the road in the hills; that the southeast corner was marked by an iron post and that the fence running north from that post was just a few feet west of the line of the place; that he carried them and showed them the fence which was supposed to be the east line of his tract; that there were 240 acres in cultivation on the west of the road; that a plat was made on the day they talked with appellee and that at the time the contract was made appellee pointed out on the plat where the road ran and where the improvements were situated; that they knew nothing of the boundaries or corners of the place except what appellee told them; that they relied upon appellee's statements and entered into the contract upon the strength of them; that later they had a survey made of the lands, beginning at the point which one of appellee's boys designated as the southeast corner, from which survey they ascertained that the reprensentations made by the appellee as to the location of the lands were not correct, and if they had known beforehand the truth as disclosed by this survey they would not have wanted the land at all.

The appellee in his pleadings and in his testimony denied that he had made any false or misleading representations. He stated that he was not familiar with the corners and boundaries of the tract of land; that the lands never had been surveyed before the time that appellants had them surveyed and that his sons did not know the corners of the land; that he was not shown the boundaries or the lines of the lands at the time he pur-

chased the same. What then was the situation of these parties?

Appellee was an ignorant farmer unfamiliar with the technical terms and legal subdivisions in describing lands under Government surveys. The appellants were engaged in the real estate business and presumably were familiar with these things. They had before them the description of these lands purchased by appellee from Caraway. They had an opportunity to, and did, examine these lands before they purchased same of the appellee. If doubtful of the boundaries, appellants should have had the survey made before, instead of after, the contract was executed.

It would be an unjustifiable imputation upon the intelligence of appellants to allow them under all the circumstances disclosed by this record, to say that they had been misled by the appellee and induced by him to enter into a contract for the purchase of lands, which, as they afterward ascertained, they did not really intend to buy and which they under no circumstances would have purchased had they known the real facts.

In *Cardwell* v. *Dennis,* 101 Ark. 608, we quoted from *Hill* v. *Bush, supra,* as follows: "A misrepresentation, in order to affect the validity of a contract, must relate to some matter of inducement to the making of the contract, in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the subject of the contract. For, if the means of information are alike accessible to both, so that with ordinary prudence and diligence the parties might respectively rely upon their own judgment, they must be presumed to have done so. Or, if they have not so informed themselves, must abide by the consequences of their own inattention and carelessness."

The above doctrine forecloses appellants from claiming a rescission of the contract on the ground of mutual mistake.

There is no error in the decree, and it is therefore affirmed.