OUTCAULT ADVERTISING COMPANY *v.* YOUNG.

Opinion delivered November 10, 1913.

1. AGENCY—AUTHORITY OF DRUMMER.—In the absence of special authority to bind his principal, a drummer can merely solicit and transmit orders, and his contracts of sale do not become complete until the orders are accepted by his principal. (Page 128.)

2. SALE OF CHATTELS—CONTRACT—OFFER AND ACCEPTANCE.—An order for a bill of goods delivered to a drummer, is not a contract of purchase, but merely a proposal which may be withdrawn at any time before acceptance. (Page 128.)

3. CONTRACTS—TERMS—OFFER AND ACCEPTANCE.—If an order for a bill of goods is countermanded, before it is accepted by the seller, the purchaser is not bound, although the offer contained the words: "This contract can not be cancelled." (Page 128.)

4. FRAUD—CONTRACTS—FALSE REPRESENTATIONS.—False and fraudulent representations that are about a material fact which was the inducement or procuring cause of a contract, will avoid the same. (Page 129.)

5. CONTRACTS—CHANGE OF TERMS—VALIDITY.—A change in a contract of the terms of payment from $2 a week to $2.08 a week, will invalidate the same. (Page 130.)

Appeal from Arkansas Circuit Court; *Eugene Lankford,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellant sued the appellee on a written contract, alleging that appellee was indebted to it in the sum of $108.16, the purchase price of certain advertising matter furnished by the appellant to the appellee. The appellee denied that it was indebted to the appellant in any sum; admitted that it had signed the contract in suit, and set up that appellee's signature to the contract, through its manager, R. P. Young, was obtained through false and fraudulent representations of the agent of the appellant, who negotiated the contract with appellee. Appellee further set up that as soon as it ascertained that the contract had been obtained through the fraudulent representations of the agent of the appellant, it countermanded the order for the shipment of the goods therein mentioned, but that appellant, although receiv-

ing the countermand, shipped the goods any way to the appellee. The appellee, as soon as the goods came, shipped same back to the appellant, and has never heard from same since.

The issue turned on whether or not the written contract was executed by the manager of the appellee through the fraudulent representations of the agent of the appellant, with whom the order for the goods was placed.

The appellant, to sustain its cause of action, introduced the witness, who was its traveling salesman, and who took the order for the goods mentioned in the contract. The witness produced the contract and testified that the goods mentioned therein had been furnished to the appellee, that same had not been paid for, and that the amount of the purchase price, $108.16, was past due.

There was a provision in the contract to the effect that same could not be cancelled and also to the effect that salesmen were not authorized to alter the contract by verbal agreement. The contract was signed, Young Hardware Company, and by C. H. Elliott, salesman. The manager of the appellee, R. P. Young, testified that he signed the order introduced in evidence; that Elliott, the traveling salesman of the appellant, came to his store and induced him to sign the contract by representing to witness that McGeorge, a partner of appellant at Hazen, had sent him (Elliott) over there to see witness; that McGeorge wanted a portion of the goods but not all of them, but that McGeorge wanted witness to buy the advertising matter and to let him (McGeorge) use it, too. Two or three days after this, witness went to Hazen, saw McGeorge and told him that he had bought the advertising matter from appellant for him. McGeorge said he did not want it. Witness told McGeorge that appellant's agent had represented that he (McGeorge) had sent him over to Stuttgart. McGeorge said that he wouldn't look at the stuff, that he had told appellant's agent that he had some postcards that he would not mind having, but denied

that he had made the representations to appellant's agent that appellee's manager, R. P. Young, claimed had been made to him when the order for the goods was signed. Witness further testified that appellant's agent had represented that the price would be $2 a week, but that afterward, when he came back after he had made out the order, the price was put in at $2.08. Witness refused to sign it; then the agent changed it back to $2. The order, as it now appears in evidence, shows that the price was afterward changed to $2.08.

The appellant objected to the above testimony in regard to the representations, and the court overruled its objections.

McGeorge testified over the objections of appellant that he did not make the representations; stated that he had told the agent of appellant that nothing in his line interested the witness at all.

Appellant duly excepted to the ruling of the court in admitting this testimony.

Other representations were set up but no objections were saved to them, and it is not material here to set them out.

Witness Young further testified on behalf of the appellee that he did not hear from the appellant in regard to the order or get an acceptance of it before he cancelled it. He stated that about the time for appellant to get his letter cancelling the order, they wired that they had shipped the goods. Witness thought he received the telegram on the 25th. He had written a letter cancelling the order on the 21st. Witness, over the objection of appellant, introduced a letter written on the 21st of March, 1910, in which he had requested appellant to cancel the order, giving as a reason that appellant's agent had made the representations alleged. Other correspondence was introduced over the objection of appellant, which is not material to the controversy and unnecessary to set out.

In rebuttal, witness, C. H. Elliott, testified that he acted as the traveling salesman of appellant in the year

1910, and that he sold the goods and took the contract with the appellee in controversy. He denied the misrepresentations alleged by appellee; stated that he called on the Young Hardware Company; "showed the service, explained how it was used, and they thought well enough of it to sign the order," which witness "accepted then and there."

The court, at the request of the appellee and over the objection of appellant, instructed the jury as follows:

1. You are instructed that if you find that if the order was countermanded before it was accepted by the company then the defendant would not be bound by the order, even though a clause provided, "This contract can not be cancelled."

On its own motion, over the objection of appellant, the court also gave the following:

"Gentlemen of the Jury: This is a suit by the plaintiff against the defendant for $108.16, on a certain contract which they set out in their complaint and introduce in evidence in this case. Now, the law is that a man should comply with his contract. Whatever contract he makes, he should comply with it, unless there is some reason for not doing so—some reason of law. One reason that the defendant gives for not complying with this contract is that he was induced by fraud on the part of the agent of plaintiff to enter into the contract. If you find from the evidence that plaintiff's agent did induce him by fraud, which was material to the terms of the contract, to enter into the contract, then the contract would be void and the plaintiff could not recover. The defendant gives another reason for not complying with the contract, and that is, that the contract was changed from $2 per week to $2.08 per week for the year. That would be a material change, and if you find from the testimony that the plaintiff or its agent did change the contract from $2 a week to $2.08, that would be such a change as would vitiate it and they can not recover. If you find that is true, you are the sole judges of the weight of the evidence and the credibility of the witnesses. The burden

of proof is on the plaintiff to make out his case by a fair preponderance of the testimony, but, the contract being shown, the burden is on the defendant to show reasons why it or he should not comply with the contract.''

The appellant excepted to the ruling of the court in giving the above instruction.

The exceptions saved at the trial were brought forward in a motion for new trial, which was overruled, and this appeal has been duly prosecuted.

*J. M. Brice,* for appellant.

1. Appellant's request for a peremptory instruction should have been granted. The order or contract specified, ''This contract can not be cancelled,'' also that ''Salesmen are not authorized to alter this contract by verbal agreement.'' 105 Ark. 50; 92 Ark. 111; 95 Ark. 421.

2. Instruction 1, given by the court on its own motion, was without evidence upon which to base it, and was misleading and erroneous. 98 Ark. 44.

*O. M. Young,* for appellee.

1. If the appellee was induced by false and fraudulent misrepresentations of appellant's agent to sign the order, and a clear preponderance of the evidence establishes that fact, appellant is bound by the acts of its agent. 75 Ark. 95; 42 Ark. 97; 48 Ark. 138; 49 Ark. 320; 53 Ark. 222. And appellee was justified in avoiding the contract. 48 Ark. 138; 69 S. W. 1021.

2. The order was countermanded by appellee before acceptance, which he had the right to do, notwithstanding the alleged agreement not to countermand. 96 Ark. 606; 74 Ark. 16; 24 Am. & Eng. Enc. of L., 1030; 1 Benjamin, Sales (4 ed.), § 41; 86 Ark. 27.

3. Fraud vitiates a contract. Instruction given on the court's own motion was correct. 22 Ark. 521; 24 Ark. 222.

WOOD, J., (after stating the facts). 1. While the written contract specifies that same can not be cancelled, the contract, when taken as a whole, shows that it was

but an order for the sale of goods. The case is controlled on this point by *Toledo Computing Scale Co.* v. *Stephens,* 96 Ark. 606, and by *Lee* v. *Vaughn Seed Store,* 101 Ark. 68.

Notwithstanding the testimony of appellant's agent, the traveling salesman, to the effect that he "accepted the contract then and there," his testimony, taken together, showed that he only meant that he accepted the order. Appellant's agent was a drummer, or a traveling salesman, and, as was held in *Lee* v. *Vaughn Seed Store, supra,* in the absence of special authority to bind his principal, a drummer can merely solicit and transmit orders, and the contracts of sale do not become complete until the orders are accepted by his principal.

It was a question for the jury, under the evidence, as to whether or not the order of sale was accepted before the same was countermanded by the appellee.

In *Merchants Exchange Co.* v. *Sanders,* 74 Ark. 16, we held that an order for a bill of goods is not a contract of purchase but merely a proposal which may be withdrawn at any time before acceptance.

The court properly instructed the jury in instruction No. 1 on the issue of whether or not the order was accepted before the same was countermanded by the appellee.

2. The court did not err in its charge to the jury on the issue as to whether or not the contract was signed by the appellee by reason of the false and fraudulent representations of the agent of appellant.

Appellee alleged in its answer that but for the representations of appellant's agent set up in the answer, that appellee would not have executed the order for the goods; that the false and fraudulent representations in the procurement of the contract avoided the same, and, further, that appellant's agent "fraudulently obtained the signature of appellee by virtue of the false and fraudulent representations."

In *French & American Importing Co.* v. *Belleville Drug Co.,* 75 Ark. 95, we held:

"In a suit to recover for goods sold, it is a good defense that the order for the goods was procured by false representations, knowingly made by plaintiff's agent as to material fact with the intent to mislead and which misled defendant to its injury."

False and fraudulent representations that are about a material fact which was the inducement or procuring cause of a contract, will avoid the same. Here the alleged representations, set up as the inducement to the contract, were material. The appellee had the right to rely upon them.

Appellant, to sustain its contention that the court erred in admitting testimony tending to show false representations on the part of appellant's agent, and also erred in submitting this question to the jury in its instruction, relies upon the case of *Outcault Advertising Co.* v. *Bradley,* 150 S. W. 148, 105 Ark. 50. That case was disposed of upon the theory that the testimony set up, as an inducement to the contract, was in the nature of parol declarations which tended to contradict or vary the terms of the written contract. The question as to whether or not the declarations were material and whether or not they were the cause of the contract and as to whether or not they were fraudulent and relied upon by the appellee in entering into the contract were not discussed in that case. Indeed, from the statement of the case, it does not appear that the alleged fraudulent representations were made for the purpose of procuring the contract, or that they were a material inducement to the contract. If such had been the case, the testimony would have been competent and should have been admitted, but, as before stated, the court did not dispose of the case on that theory. An examination of the facts of that record will discover that the cause was correctly decided, for the reason that the answer did not set up the alleged representations as a material inducement to the contract, and, further, for the reason that the alleged representations were not material, and such

representations as the appellee in that case had the right to rely upon. The appellee in that case did not have the right to rely upon the representations, for the reason that the opportunity was at hand for ascertaining the falsity of such representations. See *Cardwell* v. *Dennis,* 101 Ark. 603. By inquiry of the local newspaper, the appellee could have found out whether or not the representations were false before he entered into the contract. The case, for the reason stated, was correctly decided, but the questions now under consideration were not discussed, and, therefore, that case is not authority for the appellant's contention in the case at bar.

·The court correctly told the jury that if the contract was changed from $2 a week to $2.08 a week that that would be such a material change as to vitiate the contract, and there was testimony to warrant the submission of this question to the jury.

We find no error in the record, and the judgment is affirmed.