St. Louis, Iron Mountain & Southern Railway

Company *v.* McConnell.

Opinion delivered December 1, 1913.

1. Deeds—Reformation—Incorrect Description.—A deed will be reformed on account of a mutual mistake of the parties, only when the mistake is established by clear, convincing and satisfactory evidence. (Page 310.)

2. Deeds—Incorrect Description—Reformation.— A. deeded land to B., using an incorrect description. B. went into possession of the lands, which he thought were covered by the deed, and under the direction of A's agent, who was a party to the mistake. *Held*, under the evidence, B. was entitled to have the deed reformed, so as to cover the land intended to be conveyed by both parties. (Page 310.)

3. Deeds — Mutual Mistake — Reformation — Estoppel. — Where A. deeded land to B., using an incorrect description, where B. relied upon A. to describe the land properly, and was misled by what amounted to a misrepresentation on the part of A's agent, in an action by A. against B., B. is not estopped to dispute the correctness of the description actually used, nor to ask for a reformation of the deed   (Page 310.)

Appeal from Johnson Chancery Court; *Jeremiah G. Wallace,* Chancellor; affirmed.

*C. M. Walser,* for appellant.

1. The mistake, to be ground for reformation of a deed, must be mutual.   89 Ark. 309; 83 Ark. 131; 71 Ark. 614; 124 Wis. 536; 134 Fed. 70; 127 Mo. 255.   Equity will not relieve against a mistake induced by the negligence of the complaining party.   75 Ark. 272; 47 Ark. 335; 84 Fed. 927; 69 Ill. 221; 70 Ind. 554; 124 Wis. 536. Nor permit one who signed a contract without reading it to say that he did not know what it contained.   84 Ark. 349; 78 Ark. 177; 71 Ark. 185; 70 Ark. 512.

Where the means of information are accessible to both parties alike, they will both be presumed to have

informed themselves; and if either does not do so, he must abide the consequences of his own carelessness. 31 Ark. 170; 30 Ark. 686; 26 Ark. 28; 19 Ark. 522.

2. To authorize the reformation of a deed on account of mistake, the proof thereof must be clear, unequivocal and decisive. 85 Ark. 62; 81 Ark. 166; *Id.* 420; 79 Ark. 256; 75 Ark. 72; 127 Mo. 255. A mere preponderance of the evidence is not sufficient. 82 Ark. 226; 115 Ia. 35.

3. Equity will not relieve against mistake unless the parties can be placed *in statu quo*. 53 Ark. 16; 124 Wis. 536; 16 Cyc. 69.

*G. O. Patterson,* for appellee.

1. That the evidence to authorize the reformation of a deed must be clear, full and convincing is well established by the decisions of this court; but proof beyond a reasonable doubt is not required in any case. 134 N. Y. 148; 16 Cyc. 71; 14 S. W. 59. The mere denial by the defendant that there was a mistake and his testimony that the deed was drawn according to the intention of the parties, will not prevent the court from granting relief if it is satisfied that the deed is not in accordance with the agreement, but ought to be. 36 N. J. Eq. 369; 56 S. W. 377; 98 Ark. 10; *Id.* 23.

Mere negligence to read or know the contents of a writing is not necessarily a bar to reformation. 98 Ark. 28.

2. The chancellor's findings of fact are conclusive on appeal, unless they are clearly against the preponderance of the evidence. 91 Ark. 246.

McCULLOCH, C. J. The plaintiff, St. Louis, Iron Mountain & Southern Railway Company, instituted this action in the circuit court of Johnson County, claiming title to certain tracts of land in that county, and seeking to recover possession of timber cut by the defendants on the land; also to recover possession of certain houses and mill sheds situated on the land.

The lands are described in the complaint as the south half of the northwest quarter and the southwest quarter

of the northeast quarter of section 31, in township 11 north, range 22 west, and the plaintiff shows a complete chain of title back to the Government.

Damages were also sought to be recovered for timber cut and removed from said lands.

An order of attachment was issued and levied on property of the defendants, and an injunction was also issued restraining defendants from cutting any more timber or removing the houses from the lands.

It is shown that the defendants have erected a sawmill on the tracts of land and are proceeding to cut and remove all the timber on the aforesaid tracts.

The defendants answered, alleging that McConnell, one of the defendants, purchased said lands mentioned above, from the plaintiff, but that, by mutual mistake, the plaintiff conveyed the wrong lands, towit: The southwest quarter of the southwest quarter, the southeast quarter of the southwest quarter, and the southwest quarter of the southeast quarter of section 31, in township 11 north, range 22 west.

Defendants made their answer a cross complaint, and asked that the cause be transferred to the chancery court and that a decree be entered in their favor reforming the deed so as to correctly describe the lands according to the intention of the parties.

The court heard the causes upon depositions of witnesses, and rendered a decree in favor of defendants reforming the deed according to the prayer of the cross complaint. Damages in the sum of $250 were also awarded to the defendants for injuries sustained by reason of the injunction. The plaintiff has prosecuted an appeal to this court.

It appears from the testimony that McConnell, one of the defendants, was in the lumber business in Clarksville, Arkansas, and purchased lumber from Carlile, also one of the defendants. Carlile would seek out purchaseable timber lands and McConnell would purchase the same, and then give Carlile a contract for cutting the timber and sawing it. That was done in this instance,

and the proof tends to show that Carlile selected the lands in controversy for purchase and reported same to McConnell, who negotiated the purchase with plaintiff's agent, a man by the name of Allison. Mr. Deane, plaintiff's general agent in charge of land matters, resided and maintained his office in the city of Little Rock, but had field agents who looked after the lands and negotiated sales. Allison was a field agent in that territory, and, as before stated, the sale was negotiated with him. Carlile had a survey of the lands made and selected the lands in controversy for purchase and reported same to McConnell.

The evidence adduced by the defendants is clearly to the effect that the lands in controversy were the ones that were surveyed and which they intended to purchase. They testified that they represented to Allison, the field agent of plaintiff, that these were the lands they wanted, and relied upon him to make out the application to the general agent and describe the lands wanted. Allison, the field agent, wrote out the application, which described other lands, and it was signed by McConnell, as he says, upon reliance that Allison had written the correct description of the lands. The application was sent in and accepted and deed forwarded to McConnell, who, as he says, thought it described the lands correctly, had it recorded and put it away. Thereafter he paid the taxes on the lands through his agent, but did not give the matter his personal attention and never knew until this suit was instituted three years later that the deed described lands which he did not intend to purchase.

The evidence shows also that the lands were all for sale at the same price and that the lands in controversy were timber lands which were of the kind that McConnell was seeking to purchase, and that he had no use for the other tracts, which had no timber on them.

The appeal presents purely a question of fact whether such a mutual mistake was made as calls for the reformation of the deed, and whether that mistake is established by such clear, convincing and satisfactory

evidence as will justify a court of chancery in reforming a written instrument.

We are convinced from the testimony that defendant, McConnell, never intended to buy the lands which were actually conveyed to him, but that he intended to purchase, and thought he was purchasing, the lands which Carlile had selected, and that he never knew until the commencement of this action that a mistake had been made.

Without analyzing the testimony in any minute degree, we are of the opinion that it meets the well-established rule that, before a written instrument will be reformed, the evidence must be clear and convincing. This rule is well established by decisions of this court in cases cited on the briefs of counsel on both sides and need not be elaborated.

Learned counsel for the plaintiff invoke the rule that defendant, McConnell, is estopped to dispute the correctness of the description in the deed by reason of his neglect to read it when he had an opportunity to do so.

We do not think that he is bound by this omission, because he relied, as he had a right to, upon the agent of the company inserting the correct description. He knew nothing about the description himself and trusted to the agent to correctly write it down, and the act of the agent was equivalent to a representation that he had done so. If he was misled by what amounted to a misrepresentation on the part of plaintiff's agent, he was not estopped by reason of his failure to read over the paper or by accepting the deed. *Stewart* v. *Fleming*, 96 Ark. 371; *Outcault Advertising Co.* v. *Young*, 110 Ark. 123. He took posssesion of the tracts of land in controversy, erected a sawmill and continued, without molestation until the commencement of this suit, to cut the timber.

Nor is there anything in the contention that reformation should be denied because the parties can not be put *in statu quo,* for the status of the parties is restored according to the equities of the case by revesting the title in plaintiff which was conveyed by the deed and by vest-

ing title to the lands in controversy in defendant, Mc-
Connell.

We are of the opinion that, after giving due consid-
eration to the finding of the chancellor, we can not say
that the evidence is not sufficient to come up to the rule
of clearness and certainty necessary to reform a written
instrument.

It is not contended that the evidence is insufficient
to warrant the finding as to damages by reason of the
issuance of the injunction. Decree affirmed.