GASTINEAU, et al. v. CROW.

5-220                                    262 S. W. 2d 654

Opinion delivered December 7, 1953.

*J. E. Simpson,* for appellant.

*A. B. Arbaugh,* for appellee.

J. Seaborn Holt, J. This litigation involves a dispute over the ownership of about four acres of land in Newton County.

Appellee, Mrs. Crow, brought this suit to reform a deed which she made to appellants, alleging in effect that a mutual mistake had been made as to the number of acres conveyed.

Appellants entered a general denial and affirmatively pleaded laches and limitations.

Trial resulted in a decree in favor of Mrs. Crow and this appeal followed.

As we read the record presented, it supports the following summation of the facts as found by the Chancellor:

"September 6, 1946, plaintiff (Mrs. Crow) sold to defendant Newton County lands. She says she sold to him all that part of the W ½ of the NW ¼, Section 8, Township 16 North, Range 20 West lying east and south of the center of Buffalo River. His theory appears to be that she sold him the entire half quarter. Deed was executed and placed in escrow with the Newton County Bank to be delivered upon payment of the purchase price. Defendant took possession of the land south and east of the river and returned to Chicago. Apparently he had some ponds made on the lands. Returning from Chicago, he procured a substituted deed from the plaintiff on July 23, 1947. In 1948, the parties went to the Newton County Abstract office owned by Guy A. Moore and where Mr. Moore and George Jinks worked to procure a correction deed which was never executed. . . .

"Plaintiff (appellee) says that she and her daughter went down the lane from her home to the river with the defendant and pointed out to him the line which was to make the northwest boundary of the lands sold him; that she pointed out to him that the line was to be the center of the river; that she didn't want to sell any north and west of the river because that portion joined with the other lands which she owned; that the defendant told her he did not want any on that side of the river; that this corner which was reserved by plaintiff embraces about four acres, about half of which is in meadow while the other is waste land. She is corroborated by her daughter, Oza, who was with them at the time. The defendant doesn't directly deny this conversation. He says that the original deed (of September 6, 1946) conveyed to him only to the center of the river. . . .

"Plaintiff (appellee) says that in July, 1947, the defendant went to her after his return from Chicago and told her that he had had some legal difficulties with

parties digging some ponds for him and that in order to clear his title of any impediments on account of these difficulties he wanted plaintiff (appellee) to execute to him a substituted deed of that date. Just what these difficulties were or just what effect they could have upon his title necessitating a substituted deed does not appear of record. She says that in order to accommodate the defendant she went to the abstract office where it appears Mr. Jinks already had the deed prepared; that she executed it without reading it in the thought that it conveyed only the lands which she had originally conveyed. In this, she is corroborated in most respects by the testimony of her daughter, Oza. The defendant doesn't directly contradict the testimony of the plaintiff (appellee) and her daughter. . . .

"Plaintiff (appellee) says that she was in the tax collector's office in the Courthouse at Jasper in 1948 with the defendant in an effort to straighten up the tax records; that she discovered that defendant had caused the entire eighty acres to be assessed in his name; that she inquired of him and he made known to her that his substituted deed covered the entire eighty acres; that she told him such was a mistake because he hadn't bought the entire eighty acres; that he told her that if there was a mistake he would correct it and that they went to the abstract office to get a correction deed; that for some reason the deed was not procured that day and they came back to the abstract office the following day to get it done; that while Mr. Jinks was preparing the deed for execution it was suggested that defendant's wife would have to join in the execution; that the wife was not present and defendant explained to them that his wife didn't come on account of a headache; that plaintiff (appellee) then suggested that they go on with the preparation of the deed and take the deed down to defendant's wife for her execution and acknowledgment; that the defendant was not willing to do this; that thereupon some argument arose and the final result was that defendant declined to execute the deed. In most material respects, plaintiff (appellee) is here again corroborated by the testimony of her daughter, Oza. De-

fendant doesn't dispute the material portions of this testimony. . . .

"Plaintiff (appellee) remained in possession of all this northwest corner of the one-half quarter section at all times up to the time of the trial (farming it). Defendant paid taxes on it from 1947 to time of trial."

The decree contained this recital: "It is therefore adjudged that the deed executed by plaintiff in favor of the defendant July 23, 1947, by which she conveyed to the defendant all of the W ½ of the NW ¼ of Section 8, Township 16 N., Range 20 W., be and the same is hereby cancelled and held for naught as to all that portion thereof lying north and west of the center of Buffalo River; that title to that portion of said west half of said quarter lying north and west of the center of Buffalo River be quieted and confirmed in plaintiff."

In circumstances such as are presented here, the law is well established that in order to reform a deed or other written instrument "the evidence must be 'clear, convincing unequivocal and decisive,' and must establish the right beyond a reasonable doubt. *Mc-Guigan* v. *Gaines*, 71 Ark. 614, 77 S. W. 52. This rule does not require that the fact be established entirely beyond dispute. The only requirement is that there be more than a mere preponderance, and the evidence must be of sufficient weight to establish the issue beyond reasonable controversy or doubt." *Adcox* v. *James*, 168 Ark. 842, 271 S. W. 980.

We hold that the evidence here fully meets this requirement. The Chancellor saw and heard the witnesses and was convinced that the testimony of Mrs. Crow and her witnesses was true.

While the case comes to us for trial *de novo*, after giving due consideration to the findings of the Chancellor, we cannot say that the appellee has failed to meet the burden cast upon her by "more than a mere preponderance" of the evidence.

Appellant argues that if Mrs. Crow "executed the second deed in 1947 without reading it, it was at her

own peril'' and that her acts amounted to ratification. The answer to this contention is that the testimony shows (as indicated) that she was led to believe this second deed conveyed the same land as that described and conveyed in the first deed of September 6, 1946, and she was lulled into security by that belief. In a similar situation, we said in the *Adcox* v. *James* case, *supra:* ''Again it is contended that appellee is barred from relief on account of his own negligence in failing to read the deed. The answer to this contention is that he was led to believe that the deed conveyed the interest which he had purchased, and was lulled into security by that belief, hence he is not barred by his failure to read the deed. *St. L. I. M. & S. Ry. Co.* v. *McConnell,* 110 Ark. 306, 161 S. W. 496.''

On the defense of laches and limitations, appellants say: ''Limitation and laches run hand in hand. . . . Laches has deprived appellants of two valuable witnesses,'' one by death and the other by paralysis. This defense is untenable for the reason that it appears undisputed that appellee has at all times, up to the time of trial, been in possession of this four acre tract in dispute, claiming it and farming it. Her claim, therefore, was never allowed to grow stale. ''c. Possession of Property—One in peaceful possession of property which is the subject of adverse claims is not chargeable with laches for delay in instituting suit in equity, to enforce or protect his right.'' 30 C. J. S., § 116, page 538. See also *Grayson* v. *Bowlin,* 70 Ark. 145, 66 S. W. 658.

Finding no error, the decree is affirmed.