BALL *v.* SPENCER.

5-3263                                          378 S. W. 2d 205

Opinion delivered May 4, 1964.

*Cecil Grooms,* for appellant.

*Kirsch, Cathery* and *Brown,* for appellee.

PAUL WARD, Associate Justice. This suit was brought to reform certain deeds. The pleadings and testimony are rather long and tedious, but we believe a clear conception of the essential issues involved can be obtained from the following relatively brief statement.

Prior to 1959 appellee, Rellie Culp Smith (hereinafter called *Rellie*) obtained title to 80 acres of land described as the SW ¼ of the NE ¼ and the NW ¼ of the SE ¼, Section 31. Title to the SW ¼ of the NW ¼ is not in dispute on this appeal. On August 4, 1960 Rellie executed a deed to appellants conveying a portion of the NW ¼ of the SE ¼ (hereafter referred to as deed No. 1). The description in this deed was by metes and bounds and conveyed approximately 22 acres of land. On September 5, 1961 Rellie deeded Tom Ward all of the NW ¼ of the SE ¼ except 2 acres (not here involved) and except the 22 acres (described by the same description contained in deed No. 1). (We will refer to this deed as deed No. 2.) Later, Ward made a deed to appellee, R. E. Spencer, using the same description as in deed No. 2. (This is deed No. 3.)

Appellee, Rellie, contends she intended to convey (by deed No. 1) to appellants only 11.02 acres and that appellants knew they were to get only 11.02 acres. Later, when appellants indicated they were claiming all of the 22 acres, appellees filed suit (against appellants) to reform deed No. 1 to make it convey only 11.02 acres.

*The Complaint.* After referring to the deeds above mentioned, the complaint, among other things, contained (in essence). the following statements:

(a) Appellee (Rellie) and Gladys Ball (mother of appellants) and Gerald Ball all agreed on the description to the lands conveyed in deed No. 1; they all knew the established corners; and they all knew and agreed that the deed was to convey only 11.02 acres (as described by metes and bounds in the complaint).

(b) Appellants took possession of the 11.02 acres, but later (in late 1963) attempted to fence in the 22 acres.

(c) On April 1, 1961 appellants executed a mortgage (by the same description contained in deed No. 1) to one C. B. Dearin covering the entire 22 acres.

The prayer was that deed No. 1 be reformed to convey 11.02 acres; that the deeds to Ward and Spencer be reformed to include all of the NW ¼ of the SW ¼ except the 11.02 acres (and the other land not involved); and, that the mortgage to Dearin be reformed to cover 11.02 acres only.

*The Answer.* Appellants entered a general denial and further alleged (in substance) that Rellie helped to measure the land described in deed No. 1; that she knew or should have known the deed conveyed 22 acres and not 11.02 acres; and that she is estopped to deny the 22 acre description because she used the identical description (used in deed No. 1) in the deed to Ward (deed No. 2).

*The Decree.* On September 4, 1963, after a full hearing, the trial court found, in effect:

(a) The description in deed No. 1 should be reformed to convey 11.02 acres (setting out a metes and bounds description).

(b) The descriptions in deeds No. 2 and No. 3 should be reformed so that 11.02 acres (instead of 22 acres) would be excepted (again set out by metes and bounds descriptions).

(c) That the description in the mortgage to Dearin should not be reformed.

For reasons hereafter set out we conclude the trial court was correct in all respects, and that the decree should be affirmed. The court was justified in finding from the evidence that when deed No. 1 was executed Rellie intended to convey and appellants expected to receive only 11.02 acres.

The north line of the 22 acres extends approximately 369 feet farther north than the north line of the 11.02 acres, and the west line of the 22 acres extends approxi-

mately 183 feet farther west than the west line of the 11.02 acres, thus resulting primarily in the difference in acreage. All of the 11.02 acres is in woods, but the land on the north side (in the 22 acres) is in cultivation. Rellie testified that she, together with Gerald and his mother, measured the land and that they didn't go as far north as the cultivated land. She also stated that acreage was not discussed, but that they intended to go by the measurements. None of this was denied by appellants. Clarence Dawson testified he was familiar with the land in question; that he talked with appellant Gerald Ball about renting the land and that appellant told him he did not own any of the cultivated land, and that he (Dawson) would have to see Mr. Spencer (who at that time had received his deed).

There appears in the record a reasonable explanation for the erroneous description in deed No. 1. Rellie and Gerald Ball (with his mother) went to an abstractor to have the deed written. The abstractor told them first to make measurements of the boundaries of the land and furnish the data to him. The parties procured a "chain", made the measurements, established definite corners, and turned in the data from which the abstractor wrote the description. The trouble was that no one seemed to be sure just what kind of "chain" was used or how long it was. The abstractor testified he told them to measure the land with a chain but learned later it wasn't a regular chain used for measuring land. He also said he made a notation to the effect that the land ran north to the cultivated land. He further testified that it was his understanding that the parties marked and agreed on all the corners. Mrs. Gladys Ball (mother of Gerald) testified that she boughtt he chain at a hardware store; that it was of odd length—a light weight "cow" chain. She also admitted that there was a fence along the north edge of the woods and stated that they made no attempt to occupy or take charge of the cultivated land in 1961 or 1962. There is this additional significant circumstance. Appellants paid only $250 for the land, but it is obvious from the record that had the cultivated lands

been included, the price would have been considerably more.

We have carefully read the record and are convinced, that in a case of this type the evidence showing a mutual mistake meets the test as set out in *Gastineau, et al.* v. *Crow.* 222 Ark. 749, 262 S. W. 2d 654:

"In circumstances such as are presented here, the law is well established that in order to reform a deed or other written instrument 'the evidence must be "clear convincing, unequivocal and decisive," and must establish the right beyond a reasonable doubt. *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52. This rule does not require that the fact be established entirely beyond dispute. The only requirement is that there be more than a mere preponderance, and the evidence must be of sufficient weight to establish the issue beyond reasonable controversy or doubt.' *Adcox* v. *James,* 168 Ark. 842, 271 S. W. 980.''

It is well settled by uniform decisions of this court that equity will reform a deed on the ground of mutual mistake. The rule was well stated in *Goodrum* v. *Merchants & Planters Bank,* 102 Ark. 326, 144 S. W. 198:

". . . to entitle a party to reform a written instrument upon the grounds of mistake, it is essential that the mistake be mutual and common to both parties; in other words, it must be found from the testimony that the instrument as written does not express the contract of either of the parties thereto."

If, as indicated above, the parties agreed on the actual boundary lines of a parcel of land consisting of 11.02 acres and the description in the deed (due to a defective "chain") was written to describe 22 acres, it is of no avail to appellant (Gerald Ball) that he later claimed the larger acreage when he learned of the mistake. In other words, the important thing is what did appellants think they were getting at the time the measurements were made? In the case of *Corey* v. *The Mercantile Insurance Company of America,* 205 Ark. 546, 169 S. W. 2d 655, where the same issue arose, we said:

"In all such cases, the question is, not what the parties would have intended but for a misapprehension, not what the parties would have intended had they known better, but, rather, did the parties understandingly execute the instrument, and does it express *their intention at the time,* informed as they were?" (Emphasis added.)

Cross-Appeal. We see no merit in appellees' contention that (since deed No. 1 has been formed) the mortgagee Dearin has a lien on only 11.2 acres. 'Appellees base this contention on the fact that Rellie testified she remained in possession of the cleared land up until the mortgage was executed, and that this constituted notice to Dearin—that is, Dearin was not an innocent mortgagee. Appellees cite no authority in support of this contention. We find, however, that in the case of *Turman* v. *Bell*, 54 Ark. 273, 15 S. W. 886, all phases of this question were ably and fully discussed. Among other things it was there stated:

"If the possession has continued after the making of the deed but a short time, it might be reasonably referred to the sufferance of the grantee; but where it was long continued, it would much more strongly imply a right in the occupant, and the implication would be sufficient to cast upon strangers the duty of inquiry." As we read the *Turman* case, where a grantor remains in possession of land after he has deeded it away and the grantee later mortgages the land, notice to the mortgagee of any unrecorded interest the grantor might have in the land would depend on the facts of each particular case—such as the length of time the grantor remains in possession and the type of his possession, whether so open and notorious as would reasonably be calculated to attract the attention of a prospective purchaser or mortgagee. We find no such facts in this case. Rellie says she remained in possession of the disputed land but she does not say in what way. It does appear she did not live on the land. It is not contended she personally cultivated the land. Even if it could be said Rellie had possession, it cannot reasonably be said she retained posses-

sion long enough to arouse suspicion that she was claiming ownership. The mortgage to Dearin was executed on April 1, 1961, but it is not shown that anyone was working the cultivated land that early in the year.

In view of the above, we conclude the decree must be, and it is hereby, affirmed on direct appeal and cross appeal.