## KOHN et al *v.* PEARSON et al

83-291                               670 S.W.2d 795

Supreme Court of Arkansas
Opinion delivered May 21, 1984

*Bob Scott,* for appellant.

*Herby Branscum, Jr.,* for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellants, Kohn et al, trustees of a charitable trust established by deed in 1913, bring this appeal from a decree of the Perry County Chancery Court which held that the trust had failed, that the doctrine of *cy pres* was inapplicable, and that the *res* of the trust should revert back to the grantors and by succession to appellees, heirs in succession to the grantors. On appeal we reverse.

In 1913 for a consideration of four dollars received by R. C. Chappell, W. C. Cody, and S. Smith, "commitie", J. L. Mitchell and his wife deeded "unto the said Commity for Church House site, and the Citizens of Rosecreek" a two-acre tract of land. In 1916 the deed was recorded. Pursuant to this deed the Rosecreek community erected a church building which was used as a church until about 1960 and for community affairs, including use as a polling precinct, up to 1982.

In creating a charitable trust the settlor must describe a purpose of substantial public interest. The presence or absence of words of trusteeship in the conveyance is not necessarily determinative as to the existence of an intent to establish a trust. G. G. Bogert and G. T. Bogert, The Law of Torts § 66 (1973). In any event, all the parties acknowledged that the 1913 deed established a charitable trust.

Appellants argue that the charitable trust for the Rosecreek community has not failed because the church

house has been used continuously for a Rosecreek Community Center, and for secular meetings, and "up in the sixties" for religious meetings. An eighty-year-old witness, son of one of the original members of the committee, testified the church was built by the citizens of Rosecreek, including J. L. Mitchell, the grantor, and the building was used by the Missionary Baptists, the Free Will Baptists, and Cumberland Presbyterians for church services and for funeral services until "up in the sixties." He further testified the building was used for 4-H meetings, as a lodge for Woodsmen of the World, as a site for political speeches, and as a polling precinct for primary and general state and federal elections up through the 1982 elections. He stated that J. L. Mitchell, the grantor, attended the secular meetings of the community as well as the religious meetings. He also testified that the grounds were used for dinner on the ground after funeral services. He further testified that he, along with two others, had been elected by the citizens of Rosecreek community to serve as the committee for the administration of the trust. This evidence supports the conclusion that although the trust may have failed for the purpose of maintaining religious services, it has not failed for the purpose of benefiting the citizens of Rosecreek. We conclude the chancellor erred in finding the trust had completely failed.

Even if the trust had failed, the *res* of the trust should not revert back to the grantors and by succession to the heirs. When the specific charitable purpose of the trust fails, "if the trustees paid consideration for the transfer to them they are allowed to retain the property on failure of the trust." G. G. Bogert and G. T. Bogert, The Law of Trusts § 147 (1973). The 1913 deed clearly states that the grantors conveyed the property "unto the said Commity," the trustees, "for and in the consideration of the sum of $4.00, Four Dollars." Once property is conveyed for consideration, the grantor, or his heirs in succession, can no longer claim an interest in the land. Accordingly we conclude the chancellor erred in finding that the property should revert to the grantors and by succession to their heirs.

Appellants further argue that it is possible for the

equity court to reform a mutual mistake in the 1913 deed. In an amended response, appellants prayed the chancery court to correct a mistake on the deed which described the two-acre church house site as lying on the south forty (S40) rather than the north forty (N40) of a larger tract of land where the church was actually built. The error in the deed was not discovered until appellee's suit had been filed. For more than sixty-seven years, appellants, appellees, and the residents of Rosecreek had assumed the two-acre tract had been correctly described in the 1913 deed.

When parties come to an agreement, but by fraud or mistake fail to write it down to truly reflect their contract, equity will reform the writing to make it reflect the parties' true intention. D. Dobbs, Remedies § 4.3 (1973). "The mistake of a draftsman, whether he is one of the parties or merely a scrivener, is adequate grounds for relief, provided only that the writing fails to reflect the parties' true understanding." D. Dobbs, supra, § 11.6. It is well-established Arkansas law that equity will reform a deed upon clear, convincing, and decisive evidence that a mutual mistake has been made in the drawing of the instrument. *Warner* v. *Eslick*, 239 Ark. 157, 388 S.W.2d 1 (1965); *Booe* v. *Booe*, 210 Ark. 709, 197 S.W.2d 474 (1946); *Goodrum* v. *Merchants & Planters Bank*, 102 Ark. 326, 144 S.W. 198 (1912). There is no requirement that the proof be undisputed. *Winkle* v. *Grand Nat'l Bank*, 267 Ark. 123, 601 S.W.2d 559 (1980); *Meeks* v. *Borum*, 240 Ark. 805, 402 S.W.2d 408 (1966). The testimony of both appellants and appellees establishes that for over sixty-seven years both parties erroneously presumed the 1913 deed correctly described the tract deeded in trust and used throughout that period for the church house site. Such conduct proves beyond reasonable controversy that the mistake was mutual. See *Gastineau, et al* v. *Crow*, 222 Ark. 749, 262 S.W.2d 654 (1953). Under the circumstances of this case, we conclude there was clear, cogent, and convincing evidence to warrant the reformation of the deed by the chancery court.

Since we review equity cases *de novo*, we hold that the charitable trust has not failed, and we order the deed to be

reformed to conform to the two-acre tract in use as a church building site.

Reversed.

HICKMAN, J., concurs in the results.

GEORGE ROSE SMITH, DUDLEY and HOLLINGSWORTH, JJ., concur.

P. A. HOLLINGSWORTH, Justice, concurring. The majority holds that the charitable trust has not failed and that therefore, the chancellor erroneously ruled that the *res* of the trust should revert to the grantors. While I agree with the result reached by the majority, I would hold that way for a different reason. I do not think a charitable trust ever existed. Rather, I think the grantor's entire interest in the property was conveyed by warranty deed in 1913.

The property was sold by an instrument entitled "Warranty Deed With Lien and Relinquishment of Dower." It recited that J. L. Mitchell and W. J. Mitchell, his wife:

> for and in consideration of the sum of $4.00 Four Dollars paid and to be paid by R. C. Chappell, W. C. Cody and S. Smith, commitie, . . . do hereby grant, bargain, and sell, unto the said Commity for Church House site, and the Citizens of Rosecreek, and unto . . . heirs and assigns, forever the following lands . . . To have and to hold the same unto the said Committie and unto their Successors and unto his heirs and assigns, forever, with all appurtenances thereunto belonging. And we hereby covenant with the said Commitie that we will forever warrant and defend the title to the said lands against all lawful claims whatsoever and lands are free from all liens and incumbrances. It being hereby expressly understood that a lien is hereby retained upon said lot or parcel of land to secure the payment of residue of the purchase money he*nbefore mentioned. And I, J. L. Mighell, wife of the said M. J. Mitchell, for and in consideration of the said sum of money, do hereby release and relinquish unto the said

Commitie, all my right of dower and homestead in and to said lands.

This is nothing more than a warranty deed, selling the described property to the committee to build a church for the sum of four dollars. There is no mention of how long the property must be used as a church or what happens if it is not. To the contrary, the deed says the grantors do "grant, bargain and sell" to the committee members and their heirs and assigns "forever." The only interest retained by the grantor was in the nature of a lien until the purchase price was fully paid. To establish a charitable trust, the donor first must make a *gift* of something for a charitable purpose. 15 Am Jur 2d *Charities* § 6 (1976). Here, the grantor *sold* his property. He did not give it to the committee. Another distinguishing feature of any type of trust is that it involves a separation of equitable interest and legal title. 76 Am Jur 2d *Trusts* § 5 (1975). Here, the entire interest held by the grantor was conveyed to the grantee with this warranty deed. Since no trust existed, it is irrelevant whether or not the property is still being used as a church. I would reverse for the reasons stated above.

SMITH, GEORGE ROSE, J., joins in this concurrence.