BENEAUX *v*. SPARKS.

Opinion delivered May 10, 1920.

1. REFORMATION OF INSTRUMENTS — SUFFICIENCY OF EVIDENCE.— Equity will not reform a deed on account of a mistake in description unless the proof of such mistake be clear, unequivocal and convincing, nor unless the mistake is clearly shown to have been common to both parties.

2.  REFORMATION OF INSTRUMENTS—PROOF NEED NOT BE UNDISPUTED.—
    While there must be something more than a mere preponderance
    of evidence to show a mutual mistake in a deed, the proof need
    not be undisputed.

3.  REFORMATION OF INSTRUMENT—MISTAKE IN DIVISION LINE.—Evi-
    dence *held* to show a mutual mistake as to the division line, enti-
    tling plaintiff to reformation.

Appeal from Crawford Chancery Court; *J. V. Bour-land*, Chancellor; reversed.

The appellant, *pro se.*

It was clearly understood by all parties where the dividing line between Sparks and Beneaux was to run and defendants should not be allowed to profit by their own wrong, and the cause should be reversed, so that maps testified from but not introduced, and the evidence of defendant, Woodruff, be introduced to the end that justice be done to all parties.

WOOD, J. This action was instituted by the appellant against the appellees. The purpose of the suit was to have certain deeds canceled and to require specific performance of a contract for the sale of certain lands.

The appellant alleged in substance that she and appellee Sparks separately purchased certain lands of the appellee, Woodruff; that when the purchase was made by her from Woodruff Sparks was present and had notice of the lands which Woodruff was to convey to her and which she described in her complaint by metes and bounds. She alleged that she paid the purchase money and went into possession of the lands; that Woodruff also sold Sparks certain land adjoining; that when Woodruff executed the deed by mutual mistake of the draftsman the land which appellant bought was not correctly described, nor was the land purchased by Sparks from Woodruff correctly described; that Sparks under his deed was claiming the west eight feet of the land which appellant purchased of Woodruff.

Appellant prayed that the deeds be canceled and that Woodruff be required to execute a deed conveying the land which she purchased.

Appellee Sparks denied that appellant was the owner of the land as described in her complaint and denied that the lands which she purchased from appellee Woodruff were incorrectly described in her deed. He alleged that the lands which he purchased from appellee Woodruff were correctly described in his deed; that he took possession of the same and has occupied them since his purchase.

Appellee Woodruff answered alleging that the lands which he sold respectively to Sparks and appellant were correctly described in the deeds executed by him to them; that Sparks and appellant went upon the land in person and measured same off and agreed upon the division line which separated the property and that he afterward executed a deed to each of them for the land purchased by them respectively.

Appellant and four witnesses testified for appellant. The husband of appellant testified that he negotiated for his wife the purchase of the land from Woodruff. Woodruff went upon the land with witness and showed him the same. There was a gasoline engine on the place used for the waterworks. It was understood that witness' wife was to have the land one foot west of the engine bed. The concrete base of the engine and waterworks is a permanent structure. Witness paid Woodruff $500 and went into possession. Before the deeds were made Woodruff said to Sparks and witness, "Now we want an understanding about where the line between you is to come. The line is to come one foot west of the engine base. All that east of the point one foot west of the engine base belongs to Beneaux and all that west belongs to Sparks." Then he said to Sparks, "It has never been surveyed; come up there and we will measure it off." When we got up there we measured 272 feet west of the corner of Church and Fifth streets. Witness said to Mr. Wood-

ruff, "I do not believe that is far enough west to cover the engine bed," and Woodruff said, "Yes it is, but I will make the deed read more or less, and that will cover it." The way the land lay they could not tell just which way north and south was, but witness understood from what had been said by Woodruff in Sparks' presence that Sparks' land came to one foot west of the engine base. The deed to appellant had not yet been executed. Witness never saw Sparks' deed and did not know how it read. The first witness knew that Sparks was claiming any of the land purchased by the appellant was when Sparks started to put some posts on appellant's land. Sparks came out and witness told him where appellant's land came to and Sparks said, "Yes, but I got a deed to it and I am going to hold it. You can have the engine but I have a deed to the land and I am going to have it." Witness then had a surveyor to survey the land and found that Sparks was claiming the west eight feet of the land which appellant had purchased of Woodruff.

Four witnesses corroborated the testimony of Beneaux to the effect that when he and Sparks and Woodruff were negotiating as to where the line between the appellant and appellee Sparks should be located it was understood and agreed between them that the line was to run one foot west of the engine base. The purpose of this was to give Beneaux room to crank the engine. One of the witnesses said, there was a mark on the wall that Sparks, Woodruff, and Beneaux agreed to.

One witness testified that Woodruff came to the bank to get him to witness the trade between him and Sparks; that he understood from what Woodruff said "that Woodruff was to retain the gasoline engine base and one foot over to turn the crank and Sparks was to get the balance west. That was where the line was."

Sparks testified that there was nothing said about where the line was to run. He denied the statements made in the testimony of the other witnesses to the effect that it was agreed that the land of the appellant was to

extend one foot west of the engine base. He stated that they measured it off and Beneaux agreed to the corner. They put down a stake and when he got a surveyor and surveyed the land witness moved the stake 19 inches west. Witness bought the west 141 feet of the land. The land as shown by the survey was the land witness bought. Witness said that there was a board on the engine house of a greenish color and that is where witness traded to. All of the land west of that board was to be witness'; that greenish board is just where the survey puts the line. If the line ran from the front of the lots one foot west of the engine base, it would run angling across the lots; it would not run north and south. The 272 feet from the east line of Beneaux' came just to the point that witness bought to.

The court entered a decree dismissing the appellant's complaint for want of equity. From that decree is this appeal.

Equity will not reform a deed on account of mistake in the description unless the proof of such mistake be clear, unequivocal, and convincing, nor unless the mistake is clearly shown to be common to both parties. While there must be something more than a mere preponderance of the evidence to show a mutual mistake, the rule does not require that the proof be undisputed. The requirements of law are fully met when the testimony tending to show a mutual mistake in unequivocal and clear, that is such as to satisfy and convince the court that the mistake was made and that the instrument was so drawn as not to express what the parties to the contract intended. *Tyler* v. *Merchants & Planters Bank*, 89 Ark. 612; *James, Holcomb & Rainwater* v. *Furr*, 126 Ark. 251, and other cases collated in 4 Crawford's Digest, Reformation of Instruments, p. 4378, *et seq*.

The undisputed evidence shows that the waterworks including the engine and base were connected with the house situated on the tract purchased by the appellant. The waterworks, engine, and base had no connection with

the house on the property purchased by appellee Sparks. It is wholly unreasonable to conclude that appellant would have purchased the house with the waterworks, engine, and base without acquiring sufficient room to enable him to crank the engine which was essential to pump the water into the tank to supply the house.

The testimony of appellee Sparks, himself, shows that he purchased to a certain board of greenish color on the engine house. But, if he was correct in this, the line between them would have shut off the appellant from the space necessary to crank the engine to the waterworks.

Since the undisputed testimony shows that a definite point was determined upon to mark the dividing line between the appellant and appellee Sparks, and since the appellee Sparks does not deny that the purpose in fixing this dividing line was to give to appellant the concrete base of the engine and the waterworks, which was a permanent structure and essential to supplying water to appellant's house, we are firmly convinced that appellant's husband and the four witnesses corroborating him are correct in their statements that it was understood between Woodruff, the vendor, and Sparks and Beneaux, the purchasers, that the line between their properties should be "one foot west of the engine base."

Of the lands purchased by appellant and appellee Sparks from Woodruff, the above conclusion would result in giving to appellant all that portion east of the line one foot west of the engine base, and to appellee Sparks all west of that line. The appellee Woodruff, therefore, should have measurements made and execute deeds describing and conveying the property so as to effectuate the intention of all the parties, at the time the lands were purchased of him.

The decree is, therefore, reversed and the cause will be remanded with directions to enter a decree in accordance with this opinion.