Virginia FALLS *v.* Harold UTLEY

83-265                                    665 S.W.2d 862

### Supreme Court of Arkansas
### Opinion delivered March 5, 1984
[Rehearing denied April 9, 1984.]

*Bullock, Hardin & McCormick,* for appellant.

*John Harris,* for appellee.

JOHN I. PURTLE, Justice. The chancery court of Pope County, Arkansas, ordered reformation of a deed in fee simple absolute to reflect a reservation of mineral rights in the grantor (appellee). The argument for reversal is that the court erred in finding clear and convincing evidence upon which to base the reformation of the deed. We think the trial court was not clearly erroneous and we affirm the decree.

Appellee sold a certain Mr. and Mrs. Alexander three acres of land on May 20, 1975. A deed was passed to the Alexanders which granted surface rights only. The Alexanders then executed a note and mortgage in favor of appellee. They were unable to pay the note and mortgage as payments were due. Appellant, a relative of Mrs. Alexander, indicated an interest in purchasing the property. When appellant and appellee agreed to the sale, they caused the Alexanders to re-deed the property to appellee who then executed a deed in favor of appellant. The deed from the Alexanders to appellee was prepared by a real estate agent and made no mention of minerals. This deed was taken to a lawyer's office where the deed from appellee to appellant was prepared. The deed prepared by the lawyer did not contain a reservation of mineral rights. The consideration paid by appellant was the balance owed by the Alexanders on their note and mortgage.

The facts other than the foregoing are in considerable dispute. According to appellee, Alexander sought permission for a relative to purchase the land. He states that Alexander wanted out of the note and mortgage because of family problems with appellant. Appellant and appellee went to the lawyer's office together for the purpose of having the deed prepared. According to appellee, appellant agreed, while waiting in the lawyer's office, that she was not getting the minerals. Appellee claims he discovered the mistake two years later and immediately asked that the deed be corrected. According to him, appellant admitted she did not purchase the minerals but after finding they had been included in her

deed she declared herself the legal owner and refused to correct the deed.

Alexander testified that he purchased the property in question on May 20, 1975, and that he purchased the surface only. He discussed his default on the land with family members. He never advised appellant that he owned the minerals.

Appellant testified that she requested that she be allowed to make payment in Alexander's name but Alexander refused to agree and stated he did not want any more dealing with the family. She was aware of Alexander's default and she desired to take over the property. According to her, the mineral rights were not discussed with appellee. Appellant stated that oil companies started calling her about leasing the property in 1981. She testified, "I told them I could not lease it. It had to be checked out because after we bought it, Harold Utley had informed us he withheld the mineral rights."

The trial court found by clear and convincing evidence that reformation should be allowed to show conveyance for surface rights only. We view the trial court's finding and affirm unless it is clearly against the preponderance of the evidence. The trial court had before it the deed from appellee to the Alexanders which reserved the mineral rights. Appellant was a member of Alexander's family and desired to purchase the property. She knew there was a second mortgage on the property which was recorded at the courthouse. The deed from appellee to the Alexanders was recorded in the same courthouse. Appellant had at least constructive knowledge that the Alexanders did not acquire the mineral rights to this property. Also, she paid the amount still owed by Alexander to appellee. The evidence indicates that appellant intended to purchase her relatives' interest in the property. Both the recorded deed to the Alexanders and the mortgage from them to appellee expressly conveyed surface rights only. The chancellor observes the witnesses and is in a much better position than this court to determine the reliability of the winesses. With all the other evidence pointing to a reservation of the

mineral rights in the grantor, we are of the opinion the chancellor was not clearly erroneous in finding a mutual mistake. A court of equity has the power to correct mistakes in deeds and conform them to the intentions of the parties. Parole evidence may be used but the proof must be clear, decisive, and unequivocal. The proof need not, however, be undisputed. *Beneaux* v. *Sparks*, 144 Ark. 23, 221 S.W. 465 (1920). Courts may reform deeds where there has been a mutual mistake, or where the mistake is unilateral and accompanied by inequitable conduct by the other party. *Turney* v. *Roberts*, 255 Ark. 503, 501 S.W.2d 601 (1973).

Affirmed.

ADKISSON, C.J., and HICKMAN, J., dissent.

DARRELL HICKMAN, Justice, dissenting. I dissent because I do not feel there was clear and convincing evidence requiring reform of the deed. Essentially, this was an arm's length transaction and the appellee gave the appellant a deed to the land, in fee simple, without reserving the mineral rights. Over two years later, the appellee learned that he did not regain the mineral rights, as he claimed he intended to, and filed this lawsuit to reform the deed, alleging a mutual mistake. The only real evidence the court had below was testimony of the appellee and the appellant as to what was said and agreed to between them. The testimony was directly in dispute. Harold Utley said he told Virginia Falls in his lawyer's office that he was going to retain the mineral rights. The lawyer that prepared the deed did not testify. Either the lawyer did not hear it, did not remember it, was guilty of malpractice, or it was not said. In any event, all we have is the statement of the two parties. In view of a lack of definitive evidence, which I could characterize as clear and convincing, I have to conclude the chancellor was in error in finding a mutual mistake: it was more a unilateral one. Therefore, I would reverse the decree.

I am authorized to state that Adkisson, C.J., joins in this dissent.