Ross Alan HOPE *v.* William W. HOPE, Sr., and
Wanda Sue Flowers, as Trustee for the James Arthur and
Mary Winborne Hope Irrevocable Trust *v.*
Mary Winborne Hope, Cross-Appellant

97-629                                              969 S.W.2d 633

Supreme Court of Arkansas
Opinion delivered May 21, 1998

*Baxter and Jensen,* by: *Ray Baxter,* for appellant.

*David E. Smith,* for appellees.

ROBERT L. BROWN, Justice. This case arises out of a contract and a deed to convey timber rights in a tract of land known as "the Ridgefield," which consists of roughly 280 acres. There are essentially two issues on appeal: (1) whether the trial court erred in considering mutual mistake of fact as a basis for reformation following a motion to amend the pleadings to conform to the proof, and (2) whether the trial court clearly erred in finding that a mutual mistake of fact as to the intent of the parties had occurred. We affirm on both points.

Appellees, William W. Hope, Sr., and Wanda Sue Flowers (Trustees), are two of three Trustees for the James Arthur and Mary Winborne Hope Irrevocable Trust. The Trust owned the Ridgefield land, which was partially wooded and which was also used for pasture in the non-wooded areas. The Trustees are the children of James Arthur and Mary Winborne Hope, who were

the beneficiaries of the Trust. In order to generate capital for the Trust, the Trustees sold the timber rights to the Ridgefield land to W. L. Sorrells and the WLS Sawmill (Sorrells) for $29,762.50 but limited this timber deed to harvesting hardwood trees. Sorrells was required under the timber deed to complete his removal of the timber by December 31, 1996, at which time his rights to the timber would expire. The Sorrells timber deed was executed by the Trustees on August 30, 1994.

Appellant, Ross Alan Hope, the nephew of the Trustees and the grandson of the beneficiaries of the Trust became aware of the Sorrells timber deed and interceded. His reason for doing so was that he discovered Sorrells intended to clear-cut the hardwood trees, and he believed that stripping the land would be contrary to the wishes of his grandfather and not in the best interests of the family. After several attempts to remedy the situation through his grandfather, Alan Hope approached the Trustees and objected to the arrangement with Sorrells. Trustee William W. Hope suggested to him that if he did not like the arrangement with Sorrells, then he should purchase the timber rights himself.

Subsequent to that conversation, Alan Hope arranged for Sorrells to rescind his agreement to buy the timber from the Trust. The resulting transaction was a three-way transfer. Trustee William W. Hope worked out a rescission agreement with Sorrells. Alan Hope gave a check to Trustee Hope made payable to Sorrells for $31,762.50. This sum included the original price Sorrells paid for the timber which was $29,762.50 plus $2,000 additional compensation for Sorrells's agreement to rescind the arrangement. Trustee Hope delivered the check to Sorrells.

On September 25, 1994, the Trustees signed a Bill of Sale with Alan Hope for "all timber rights" on the Ridgefield land to include "all harvesting and planting of timber from henceforth" for a sales price of $29,762.50. On September 30, 1994, the Trustees executed a timber deed that conveyed the timber rights to him. Neither the contract nor the deed restricted Alan Hope to harvesting only hardwood trees. The granting clause of the deed read as follows:

[D]o hereby grant, bargain, sell and convey unto the Grantee, and unto his heirs and assigns forever, all of the standing and growing timber together with all timber rights on and associated with the two hundred eighty (280) acres known as the "Ridgefield", timber rights to include all harvesting and planting of timber from henceforth.

In 1996, Alan Hope began planting seedlings in the open areas of the Ridgefield land which limited the land's use as pasture. The Trustees requested that he stop planting the seedlings, and he informed the Trustees that he had been granted title under their deed to cut and plant trees on the land "henceforth." The Trustees rejoined that they had intended to convey to him the same interest in the timber that they had conveyed to Sorrells.

On March 12, 1996, the Trustees filed their amended complaint against Alan Hope and sought reformation of the timber deed in question. Their basis for reformation of the timber deed was unilateral mistake on the part of the Trustees and fraud and inequitable conduct by Alan Hope. After hearing testimony, the trial court found that the timber deed to Alan Hope did not reflect the intent of the parties and was, therefore, subject to reformation based on mutual mistake of fact.

By judgment dated March 18, 1997, the trial court reformed the deed to limit the interest transferred. The pivotal finding of the trial court reads:

> 3. The evidence showed that the Plaintiffs intended to sell and Defendant to buy only certain merchantable timber standing and growing on the Ridgefield properties on September 30, 1994. Yet, the timber deed in question purported to be a perpetual timber deed encompassing the entire 281 acres comprising the Ridgefield properties, which would equate to an outright conveyance for all practical intents and purposes. The Court, therefore, finds, that the granting clause which purported to convey to the Defendant all of the standing and growing timber rights, and rights to plant and harvest timber on the Ridgefield properties "forever" was the result of mutual mistake.

The trial court then reformed the timber deed to read:

[D]o thereby grant, bargain, sell and convey unto the said Grantee, and unto his heirs and assigns, all of the merchantable standing and growing timber as it exists as of September 30, 1994, on the two hundred eighty (280) acres known as "Ridgefield", to be harvested within a reasonable time after September 30, 1994, such reasonable time to be consistent with good customary select-cutting practices recognized in the industry would indicate on their property as it was September 30, 1994.

The trial court also ordered in its judgment that if the parties could not agree within ten days on the selection of a registered forester to set the reasonable time necessary to remove the trees, the trial court would appoint one. Alan Hope now appeals the judgment of the trial court reforming the deed.

## I. Pleadings Conformed to Proof

We first address Alan Hope's contention that the trial court erred in permitting a non-specific motion to permit the Trustees to amend their complaint to conform to the proof presented at trial. At issue is the fact that the filed complaint asserted a reformation theory premised on unilateral mistake by one party and fraud or inequitable conduct by the other. The judgment of the trial court, however, based reformation on mutual mistake of fact.

Rule 15(b) of our Rules of Civil Procedure allows for the amendment of the pleadings to conform to the evidence introduced at trial:

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended in its discretion. The court may grant a continuance to enable the objecting party to meet such evidence.

■  We initially observe several things about the Rule.  It is liberal in its allowance of amendments to conform pleadings to proof and even contemplates an amendment *after judgment*.  If no amendment is made, this does not affect the trial of issues not raised in the pleadings.  Even when an objection is made that the issue was not included in the pleadings, which was not done in the instant case, the trial court may allow an amendment at its discretion.  Moreover, we agree with the holding of the Court of Appeals that permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue.  *See In Re Estate of Tucker*, 46 Ark. App. 322, 881 S.W.2d 226 (1994).

Here, Alan Hope contends that he had no notice of the mutual-mistake issue because there was no evidence or argument introduced of mutual mistake at trial.  We disagree with that contention.  We first observe that when the Trustees' counsel moved to conform the pleadings to the proof at the end of the trial, Alan Hope's counsel did not object.  Moreover, a key issue at trial was what did Alan Hope intend to purchase with his timber deed on September 30, 1994.  Testimony at trial from the Trustees was that their nephew intended to purchase the same timber rights as Sorrells, the difference being that he would not cut the timber.  There was also proof that the sales price paid by Sorrells and the sales price set out in Alan Hope's Bill of Sale were the same.  There was also proof presented that what Alan Hope arguably received by the timber deed was more akin to a fee simple interest.  This proof easily raises the issue that the resulting timber deed represented a mutual mistake of fact.

■  We hold that there was no manifest abuse of discretion by the trial court on this point.  *See Thompson v. Dunn*, 319 Ark. 6, 889 S.W.2d 31 (1994).

## II.  Mutual Mistake

We turn next to the core issue in this appeal and that is whether the Trustees proved that the terms of the timber deed to Alan Hope did not reflect the intent of the parties and, thus, were the result of a mutual mistake of fact.

■ Both the trial court's standard of review in reformation cases and our standard of review have been clearly set out in our prior decisions. Courts of equity have the authority to reform deeds when the evidence is clear, convincing, and decisive and when there has been a mutual mistake in drafting the instrument. *Morton v. Park View Apartments,* 315 Ark. 400, 868 S.W.2d 448 (1993); *Falls v. Utley,* 281 Ark. 481, 665 S.W.2d 862 (1984). The evidence necessary to justify a reformation based on mutual mistake need not be undisputed. *Falls v. Utley, supra; Kohn v. Pearson,* 282 Ark. 418, 670 S.W.2d 795 (1984). On appeal, we try these cases *de novo. Kohn v. Pearson, supra; Warner v. Eslick,* 239 Ark. 157, 388 S.W.2d 1 (1965). Our test on appeal is whether the trial court's decision was clearly erroneous. *Falls v. Utley, supra. See also Lambert v. Quinn,* 32 Ark. App. 184, 798 S.W.2d 448 (1990).

■ Courts of equity will reform a writing to reflect the parties' true intent when, by mistake, the parties fail to write down the agreement accurately. *Kohn v. Pearson, supra, citing D. Dobbs,* REMEDIES § 4.3 (1973). *See also Morton v. Park View Apartments, supra.*

■ Two cases, we believe, are instructive on the law in Arkansas on the reformation of deeds. *See Falls v. Utley, supra; Warner v. Eslick, supra.* In *Warner v. Eslick, supra,* the issue involved the property description in the deed and whether it should be reformed. In 1959, the grantee of a piece of land bought it and resided on the purchased property for 2½ years. He then brought an ejectment suit against the grantor and contended that the deed's property description included the grantor's land as well. The grantor counterclaimed for reformation of the deed. Though the testimony on both sides was in sharp conflict, the trial court granted the grantor the reformation relief requested. On appeal, this court affirmed the reformation of the deed to reflect the parties' intent based on mutual mistake and stated:

> Hence the bare fact that Warner [the grantee] insists that he meant to buy whatever was described in the deed is not in itself necessarily sufficient to preclude a finding that a mutual mistake occurred. We must arrive at our conclusion from a study of the testimony as a whole.

*Warner*, 239 Ark. at 160, 388 S.W.2d at 3. This court concluded that a mutual mistake had occurred based on the circumstances of the case.

In *Falls v. Utley, supra*, the issue was whether the grantor intended to convey mineral rights to the grantee, when no reservation of mineral rights was included in the deed. The trial court found that he did not. Again, the proof of the parties was in considerable dispute. We affirmed and stated:

> The chancellor observes the witnesses and is in a much better position than this court to determine the reliability of the witnesses. With all the other evidence pointing to a reservation of the mineral rights in the grantor, we are of the opinion the chancellor was not clearly erroneous in finding a mutual mistake. A court of equity has the power to correct mistakes in deeds and conform them to the intentions of the parties.

*Falls*, 281 Ark. at 483-84, 665 S.W.2d at 864.

The statement of the law of reformation expressed in *Falls v. Utley, supra*, is correct. Other jurisdictions have recently proclaimed that an instrument may be reformed based on mutual mistake of fact when its terms do not conform to the agreement or to the intent of the parties. *See, e.g., Voss v. Brooks*, 907 P.2d 465 (Alaska 1995); *Guardian State Bank v. Stangl*, 778 P.2d 1 (Utah 1989); *Cherokee Water Company v. Fooderhause*, 727 S.W.2d 605 (Tex. Ct. App. Texarkana 1987); *Kendall v. Lowther*, 356 N.W.2d 181 (Iowa 1984); *Atchison v. Englewood*, 568 P.2d 13 (Colo. 1977). *See also* 66 AM. JUR. 2d *Reformation of Instruments* § 13, p. 538.

We turn then to the case at hand. In addition to the language in the timber deed granting him timber rights "henceforth," Alan Hope argues that Trustee Hope was experienced with deeds as an engineer and land surveyor and Trustee Flowers was a legal secretary of long standing. Both people, he contends, understood the significance of the terms of his timber deed and knew what was being conveyed.

The Trustees responded at trial with the expert testimony of David Reinold, an expert forester, land surveyor, and certified general appraiser. Reinold testified that if the language of the

deed were to be upheld, the Trustees would retain nothing more than mineral and oil rights to the property as well as hunting rights. They would not be able to use the land for pasture, develop the land in any way, or even live there without interfering with Alan Hope's timber rights. As a result, the deed, according to Reinold, effectively transferred rights generally associated with the ownership of the land to Alan Hope. Reinold estimated the fair market value for this transfer in fee simple at $193,900.

Viewing the testimony as a whole, as we must, we believe that the trial court was not clearly erroneous in its finding of a mutual mistake of fact in the wording of the deed as opposed to what the parties intended. The proof in this case confirms that what the Trustees and Alan Hope intended at the time of the contract and deed was a conveyance of essentially the same timber rights as those conveyed to Sorrells. What substantiates this conclusion is, first, the sales price for both transactions was the same — $29,762.50. Secondly, Trustees Hope and Flowers both testified that Alan Hope only wanted to stop the clear-cutting which would accord more with his grandfather's wishes. The Trustees added that Alan Hope never asked to be granted an interest greater than that deeded to Sorrells. Both Trustees testified that they were of the opinion that Alan Hope was not going to cut any trees and that is why the category of trees to be harvested was unimportant.

Then there is the fact that Alan Hope agreed on cross-examination that he did not intend to take the Ridgefield land in fee simple. The effect, however, of what he maintains was conveyed to him would have been exactly that. By cutting the trees and planting seedlings in the pasture land "henceforth," he effectively controlled surface rights to the entire property, except for hunting rights. Renting the pasture land was an important source of income for the beneficiaries of the Trust, both of whom were alive when the Alan Hope timber deed was executed.[1] Preventing this rental income by growing trees in the pasture land would have run directly counter to the purpose of the Trust.

---

[1] Both beneficiaries are now deceased.

■ The trial court, of course, had the benefit of assessing the credibility of all the witnesses at trial. It concluded that Alan Hope intended one thing when the timber deed was executed to him on September 30, 1994, and quite another when he discovered that the deed could be read much more expansively. Much like the situation in *Falls v. Utley, supra,* and *Warner v. Eslick, supra,* here the parties intended something much different at the time the deed was signed from the way the timber deed could actually read. We cannot say the trial court clearly erred in concluding as much and reforming the deed instrument.

There is one additional point. The reformed timber deed allows for select cutting "within a reasonable time." The judgment further provides that a registered forester will be agreed upon by the parties or appointed by the trial court to assist in determining what is a reasonable time for harvesting. Though neither party raised this issue, we conclude that this fact does not undercut the finality of this judgment.

■ Alan Hope testified at trial that he had already recouped $22,976.59 of his purchase price from timber sales. Counsel for both parties agreed in oral argument before this court that Alan Hope is close to realizing repayment of his full sales price for the timber. Presumably, a registered forester has already been selected by the parties to determine the "reasonable time" for harvesting, since select cutting is underway. Under these circumstances, we view the issues between the parties to be resolved. *See Chambers v. Manning,* 315 Ark. 369, 868 S.W.2d 64 (1993).

Affirmed.

THORNTON, J., not participating.

Special Associate Justice H.E. CUMMINS joins.