SLIP OPINION



Cite as 2016 Ark. App. 554

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–16-264

| | |
|---|---|
| AVERY ALEXANDER, TINA RENEE ALEXANDER, AND CAROLYN VASSAR[1] | **Opinion Delivered** November 16, 2016 |
| APPELLANTS | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35-CV-2011-704-2] |
| V. | |
| | HONORABLE ROBERT H. WYATT, JR., JUDGE |
| CURTIS ALEXANDER | |
| APPELLEE | AFFIRMED IN PART; REVERSED IN PART |

## PHILLIP T. WHITEAKER, Judge

The subject of this appeal is a parcel of property in Jefferson County. The parties to this dispute are siblings. Appellants Avery Alexander and Carolyn Vassar[1] contend that the Jefferson County Circuit Court erred in reforming a deed to a portion of the property; in addition, the appellants challenge the circuit court's decision to award attorney's fees to appellee Curtis Alexander. We affirm in part and reverse in part.

### I. *Background*

C.G. Alexander and Jessie Alexander were the parents of fourteen children, including Avery, Carolyn, and Curtis. In 1967, C.G. and Jessie acquired a tract of land that encompassed roughly eighteen acres from George and Lillie Alexander. In 1968, C.G. and

---

[1] Appellant Tina Alexander is Avery Alexander's wife.

Jessie conveyed a small parcel at the northern edge of that tract of land to Clayborn and Elizabeth Carroll. In 1990, Curtis decided to build a new house for his parents on a parcel of property adjacent to, and to the west of, the parcel that C.G. and Jessie had conveyed to the Carrolls. Curtis contracted with L.J. Randle to build the home. In order to accomplish the construction, C.G. and Jessie issued a deed to Curtis and his sister, Olga.[2] Unknown to C.G., Jessie, Curtis, and Olga at the time, however, the deed contained an erroneous property description. It contained the same legal description as the property that C.G. and Jessie had deeded to the Carrolls in 1968, instead of the legal description of the adjacent parcel on which the house was built. Curtis then executed a construction mortgage and promissory note to Randle for the construction of the home. Unknown to Curtis and Randle, these documents also contained the same erroneous property description from the deed. Randle completed construction of the home in 1992. It is undisputed that C.G. and Jessie lived in the home after its completion until their deaths.

In 1996, Randle sued Curtis for nonpayment on the promissory note and for foreclosure on the mortgage. Randle obtained a default judgment against Curtis. In the process of this litigation, notice of the erroneous property description arose for the first time. As a result, Randle filed an unjust-enrichment action against Curtis, C.G., and Jessie and was awarded a judgment in November 2000.

In 2010, several events of significance occurred. Jessie died intestate in January 2010,

---

[2] Curtis explained at trial that his parents issued the deed because they all understood that "you need to own the property to build a house" on it.

and C.G. died intestate five months later in June.[3] In between these two events, in March 2010, Avery recorded a quitclaim deed conveying C.G.'s real estate to Avery and Carolyn as joint tenants in common. The same day, an affidavit of death terminating C.G. and Jessie's tenancy by the entirety was recorded. Avery took these actions based on a general durable power of attorney purportedly executed by C.G. in April 2008.

The instant litigation began in November 2011. Curtis filed suit seeking two forms of relief: (1) reformation of the 1990 deed from his parents to him and Olga in order to reflect the correct legal property description; and (2) an order of the court setting aside the March 2010 quitclaim deed. With respect to the latter relief, Curtis alleged that Avery had abused his power of attorney by conveying C.G.'s property "to himself and his sister in an attempt to exclude the remaining siblings from inheriting the remainder of the property." Avery and Carolyn filed an answer generally denying Curtis's allegations and reserving the right to plead further, including pleading affirmative defenses. They subsequently filed an amended answer asserting the affirmative defense of laches, contending that Curtis had "stood idle [*sic*] by for nearly twenty-two years before he filed his claim to reform the deed."[4]

After a trial, the circuit court entered judgment granting Curtis both of his requests

---

[3] No estate was ever opened for C.G. or Jessie.

[4] Avery and Carolyn also pleaded adverse possession as an affirmative defense, noting that C.G. and Jessie had been in possession of the real property continuously for more than seven years and had satisfied the other requirements of adverse possession. They have abandoned any argument pertaining to adverse possession on appeal, however, and we do not discuss the matter further.

for relief. As to the reformation of the 1990 deed, the court found that none of the parties contested the fact that the deed contained an erroneous description.[5] The court further found that, despite Avery's pleading of the affirmative defenses of laches and adverse possession, he presented no proof to support those defenses. Accordingly, the court granted Curtis's request to reform the deed, and the judgment set forth the correct legal description thereof. As to the 2010 quitclaim deed, the court first found that the power of attorney that Avery used to quitclaim the property to himself and his sister was invalid. As a result, the court found the quitclaim deed itself to be void. The circuit court also awarded Curtis attorney's fees, travel expenses, and costs totaling $5841.88.

Avery timely appealed. On appeal, however, Avery does not challenge the circuit court's decision to reform the deed, nor does he argue that the circuit court erred in finding the power of attorney to be void. Rather, he argues that the court lacked jurisdiction to enter the order in the absence of all necessary parties and that the court erred in finding that he presented no proof of his affirmative defense of laches. In addition, he argues that the circuit court erred in awarding Curtis attorney's fees.

## II. *Discussion*

### A. Necessary Parties

In his first argument on appeal, Avery notes that there are fourteen children in the Alexander family, but Curtis chose to sue only Avery and Carolyn. He therefore complains

---

[5] Curtis elicited testimony from both Avery and Carolyn that they agreed that the legal description on Curtis's deed was incorrect.

that the circuit court erred in rendering a decision without having all necessary parties before the court. Avery never sought to join his siblings, however, nor made mention at any point in the circuit-court proceedings that they were necessary or indispensable parties. This court will not address an argument concerning whether all necessary parties were joined when that argument was not made in the circuit court and is being raised for the first time on appeal. *See Vibo Corp. v. State ex rel. McDonald*, 2011 Ark. 124, at 9, 380 S.W.3d 311, 420; *Milberg, Weiss, Bershad, Hynes & Lerach, LLP v. State*, 342 Ark. 303, 310–11, 28 S.W.3d 842, 847 (2000); *Meister v. Reddmann*, 241 Ark. 854, 410 S.W.2d 769 (1967).

## B. Evidence of Laches

Avery next contends that the circuit court erred in finding that he presented no proof on his affirmative defense of laches. This is essentially a challenge to the circuit court's evidentiary ruling. We will not reverse a circuit court's evidentiary ruling absent an abuse of discretion. *Howard v. Adams*, 2016 Ark. App. 222, at 4, 490 S.W.3d 678, 682.

At trial, Avery attempted to argue that Curtis should have been aware of the defect in his property description since the 1996 default judgment against him and thus should have acted sooner. The circuit court, however, limited Avery to presenting evidence of matters that had occurred since he purportedly acquired the property via the quitclaim deed in 2010.

On appeal, Avery does not specifically contend that the circuit court abused its discretion in limiting his evidence to matters that occurred after 2010. Instead, he points to evidence he presented of events that happened prior to that date—such the 1996 default judgment against Curtis and the fact that C.G. and Jessie had to pay off the balance of the

house—and asserts that those facts demonstrate that his parents detrimentally relied on another party's conduct and were prejudiced as a result. *See, e.g.*, *Williams v. Arnold*, 2015 Ark. App. 715, at 9, 479 S.W.3d 56, 62 (setting forth the elements of laches). Avery misses the point. For example, Avery argues that the circuit court "obviously ignored the legal proceedings had against Curtis wherein judgment was entered against him in 1996." The circuit court did not "ignore" those proceedings; it ruled that they were irrelevant. Here, Avery does not expressly challenge the court's ruling regarding relevance and admissibility. In the absence of compelling argument that the circuit court abused its discretion on this evidentiary matter, we affirm.

We also note that Avery does not challenge the circuit court's ultimate conclusion that Curtis's deed should be reformed. Indeed, Avery agreed at trial that Curtis's deed contained an incorrect legal description. Courts of equity have the authority to reform deeds when the evidence is clear, convincing, and decisive and when there has been a mutual mistake in drafting the instrument. *Morton v. Park View Apartments*, 315 Ark. 400, 868 S.W.2d 448 (1993); *Falls v. Utley*, 281 Ark. 481, 665 S.W.2d 862 (1984). The evidence necessary to justify a reformation based on mutual mistake need not be undisputed. *Falls*, *supra*; *Kohn v. Pearson*, 282 Ark. 418, 670 S.W.2d 795 (1984). Our test on appeal is whether the trial court's decision was clearly erroneous. *Hope v. Hope*, 333 Ark. 324, 969 S.W.2d 633 (1998). Given Avery's concession that the deed from C.G. and Jessie to Curtis contained a mistake in the legal description, we affirm the circuit court's order reforming that deed.

III. *Attorney's Fees*

At the conclusion of its order reforming the deed, the circuit court made the

following findings:

> This matter was previously set for trial on August 27, 2012. All parties
> appeared. Prior to the start of trial, the defendants moved for continuance. The
> plaintiff had already traveled from California. The Court granted the continuance, but
> reserved the issue of reimbursement to plaintiff for his travel expenses. The Court
> finds that plaintiff is entitled to the sum of $3,341.88 and judgment is granted against
> the defendants, Avery Alexander and Carolyn Vassar, for this sum. ($2,234.00
> mileage, $693.00 for hotel, and $414.00 for meals).
>
> The defendants testified that the only reason they conveyed the land to
> themselves was to avoid probate and protect the interests of their brothers and sisters
> in C.G.'s property. However, Avery testified that after five (5) years of litigation, they
> had yet to convey the property to their siblings and acknowledged that Curtis had to
> sue them and incur legal expenses. For these reasons, the Court grants plaintiff
> judgment against Avery Alexander and Carolyn Vassar for an additional sum of $2,500
> for plaintiff's attorney's fees and costs.

The court cited no authority for its award of attorney's fees. In his final point on appeal,

Avery argues that this ruling was in error.

Arkansas courts follow the American rule, which requires every litigant to bear his or

her attorney's fees absent statutory authority or a contractual agreement between the parties.

*Stokes v. Stokes*, 2016 Ark. 182, at 10, 491 S.W.3d 113, 120; *Carter v. Cline*, 2013 Ark. 398,

430 S.W.3d 22; *Griffin v. First Nat'l Bank of Crossett*, 318 Ark. 848, 888 S.W.2d 306 (1994).

Arkansas Code Annotated section 16-22-308 (Repl. 1999) permits an award of fees to a

prevailing party in certain civil actions:

> In any civil action to recover on an open account, statement of account, account
> stated, promissory note, bill, negotiable instrument, or contract relating to the
> purchase or sale of goods, wares, or merchandise, or for labor or services, or breach
> of contract, unless otherwise provided by law or the contract which is the subject



matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

A trial court's decision whether to award attorney's fees for a breach of contract will not be set aside absent an abuse of discretion. *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995).

In *Stokes*, *supra*, the supreme court held that, in actions such as quiet-title proceedings and actions to set aside deeds, the appellate courts must look to the pleadings to determine the nature of a claim and to decide whether the claim sufficiently concerns a breach of a contract. The court noted as follows:

> We . . . acknowledge that the fees are permitted when a breach–of–contract action seeks equitable remedies such as specific performance. *See, e.g.*, *Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995). But this court has stated that the statute does not authorize fees when the claim merely has some connection to a contract. *See, e.g.*, *City of Little Rock v. Hudson*, 366 Ark. 415, 236 S.W.3d 509 (2006).

*Stokes*, 2016 Ark. 182, at 11, 491 S.W.3d at 121. In *Stokes*, the litigation was a quiet-title action. Although the parties used terms such as "failure of consideration" and "breach of a condition imposed by the warranty deed," the supreme court determined that those terms did not determine the nature of the lawsuit. Because the quiet-title action did not actually raise a breach-of-contract claim, the supreme court held that attorney's fees were not authorized. *Id*.

In this case, Curtis's complaint referenced the warranty deed between his father and him, but he never alleged that there had been a breach of the contract. Instead, he merely sought reformation of the deed to reflect the correct legal description to the property. In addition, he asked for Avery's quitclaim deed to be set aside. In neither of these prayers for



relief did Curtis allege that a contract had been breached. Because he made no claims for any sort of contract-related relief, section 16-22-308 did not apply, and the circuit court erred in awarding attorney's fees.

Affirmed in part; reversed in part.

VIRDEN and GLOVER, JJ., agree.

*Cross & Kearney, PLLC*, by: *Othello C. Cross*, for appellants.

*R. Victor Harper*, for appellee.